## CALVIN O. GOTT *vs.* R. M. PULSIFER & others.

Suffolk. November 23, 1876. — March 7, 1877.

In an action for publishing a false and malicious statement concerning the property of the plaintiff, the special damage alleged being the loss of the sale of the property, evidence of its value as a scientific curiosity, or for exhibition, is immaterial.

Fair and reasonable comments, however severe in terms, may be published in a newspaper concerning anything which is made by its owner a subject of public exhibition, and are privileged communications for which no action will lie, without proof of actual malice.

In an action for publishing in a newspaper a false and malicious statement concerning the property of another, actual malice may be inferred from false statements, exceeding the limits of fair and reasonable criticism, and recklessly uttered in disregard of the rights of those who might be affected by them; and it is erroneous to instruct the jury that the plaintiff must prove a disposition wilfully and purposely to injure the value of the property, with wanton disregard of the interest of the owner.

TORT. The declaration alleged that, at the time of the publication hereinafter referred to, the plaintiff was the owner of a certain stone figure or image, being or resembling a colossal statue of a man, which statue, figure or image was formerly exhumed at Cardiff in the State of New York, and was publicly known as the "Cardiff Giant" or "Onondaga Statue"; that the statue was of great value to the plaintiff as a scientific curiosity and for the purpose of exhibiting the same as such curiosity, and had long been a source of great gain and profit to the plaintiff by exhibiting the same as a public show; that the defendants were on November 13, 1873, the proprietors and publishers of a certain newspaper published in Boston, to wit, the Sunday Herald; that on that day the defendants published in their said paper a certain false, scandalous and malicious libel

of and concerning the plaintiff, and of and concerning his said property, to wit, his said statue, figure or image, in the words following :

" The sale of the Cardiff Giant, so called, at New Orleans, for the small price of eight dollars, recalls the palmy days of that ingenious humbug. We well remember the learned remarks made by connoisseurs in this city when it was exhibited in a vacant store quite near our office. While the vulgar herd only looked on in silence, seeing a colossal figure which excited their curiosity, but which they did not attempt to explain, the Harvard professors and other learned men traced its pedigree by their knowledge of artistic history, and constructed theories as to its origin, which at once displayed their erudition, and helped to advertise the show. But our professors and learned men were not the only victims of the sell. A distinguished professor of Yale discussed learnedly upon it in the Galaxy Magazine. He demonstrated beyond a doubt that the statue was authentic, that it was antique, and that it was a colossal monolith. He ciphered it down that it was a Phœnician image of the god Baal, and found no difficulty in proving to his own satisfaction that it was brought to America by a Phœnician party of adventurers, who sailed in one of the ships of Tarshish, and that it was buried by the idolaters to save it from desecration by the hordes of savages who overpowered and destroyed the Phœnicians. He accounted for several marks and symbols upon the image, which were unmistakably Phœnician. Not long afterwards the man who brought the colossal monolith to light confessed that it was a fraud, and the learned gentlemen, who had indorsed its authenticity, were left as naked as the statue itself."

The declaration then alleged that the statue had never been sold in New Orleans for eight dollars, and that it had never been there ; that, by reason of said libel, the plaintiff was prevented from selling his said statue, and thereby caused to lose $30,000, and that one Thomas Palmer had, prior to the publication of said libel, agreed to purchase said statue, and to pay therefor in real estate then worth a large sum, to wit, the sum of $30,000 but that by reason of said libel said Palmer was caused and induced to refuse to carry out his agreement, and wholly aban doned the same.

At the trial in the Superior Court, before *Rockwell*, J., the publication of the article was admitted by the defendants and also the fact that it referred to the plaintiff's statue.   Both the plaintiff and Palmer testified that the latter agreed in writing to purchase one half of the statue, and offered for the same real estate, worth at the time of the agreement $17,000, and that on account of the defendants' publication he refused to carry out his agreement.

The plaintiff introduced evidence tending to show that the statement in regard to the sale at New Orleans was false, and offered evidence concerning the value of the statue as a scientific curiosity ; but the judge ruled that the question of its value in that respect, or for purposes of exhibition, was immaterial.

The only evidence put in by the defendants was that one of them testified that he wrote the article as a humorous comment on an article which he saw in the Chicago Tribune, purporting to give a detailed account of the sale of the Cardiff Giant at New Orleans for $8, and commenting at length thereon ; and that he did not know the plaintiff, and wrote without malice.

The plaintiff requested forty-one instructions to the jury, of which it is only necessary to state the following :

" 9. That if the defendants published said article heedlessly and carelessly, without due regard to the rights of the owner of the Cardiff Giant, they are liable to the plaintiff for all damages thereby caused him."

The judge declined to give any of the instructions requested in the form in which they were presented, but instructed the jury as follows :

" This is in effect an action for special damages on the case for disparaging the plaintiff's statue.   The only ground on which it can be maintained is special damage, which must be set out in the declaration and established by the proof.   The only allegation of special damage is in relation to the transaction with Palmer.   To sustain this action the plaintiff must prove, and the jury must be satisfied, that the publication was false in some material respect, and that it occasioned special damage to him, the plaintiff, by reason of the contract with Palmer, which would have been otherwise carried through ; that the publication was malicious, that is to say, that the disposition and purpose

differed from the general purpose of published news, or interest-
ing and instructing their readers by their published articles ; a
disposition wilfully and purposely to injure the value of this
statue with wanton disregard of the interest of the owner.    If
the plaintiff has shown that he was the owner of the statue
alluded to in this publication, that it was valuable to him to sell
in whole or in part, and that the publication was made falsely
and maliciously by the defendants, and that it caused an injury
to the plaintiff by preventing the sale to Palmer, the action may
be maintained, although in the publication no imputation is cast
on the personal character of the plaintiff.    But if the jury are
satisfied that the publication was honestly made by the defend-
ants believing it to be true, and that there was reasonable occa-
sion in the conduct of their newspaper in matters where their
interests were concerned, an occasion which fairly warranted the
publication, that would be a good defence to the action, unless
express malice or malice in fact is proved."

The judge gave the jury no instructions as to the difference
between malice in fact and malice in law, and gave the jury
no definition of malice, other than as above stated ; but no
request was made for further instructions upon the subject of
malice.    Instructions in relation to damages were given, to
which no objection was made.    The jury found for the defend-
ants ; and the plaintiff alleged exceptions to the rulings and re-
fusals to rule as requested.   ·

J. W. Pickering, for the plaintiff.

C. J. Brooks, for the defendants.

GRAY, C. J.    This action is not for a libel upon the plain-
tiff, but for publishing a false and malicious statement concern-
ing his property, and could not be supported without allegation
and·proof of special damage.    Malachy v. Soper, 3 Bing. N. C.
371 ; S. C. 3 Scott, 723.    Swan v. Tappan, 5 Cush. 104.    The
special damage alleged was the loss of the sale of the plaintiff's
statue to Palmer.    Evidence of the value of the statue as a scien-
tific curiosity or for purposes of exhibition was therefore rightly
rejected as immaterial.

The editor of a newspaper has the right, if not the duty, of
publishing, for the information of the public, fair and reasonable
comments, however severe in terms, upon anything which is

made by its owner a subject of public exhibition, as upon any other matter of public interest; and such a publication falls within the class of privileged communications for which no action can be maintained without proof of actual malice. *Dibdin* v. *Swan,* 1 Esp. 28. *Carr* v. *Hood,* 1 Campb. 355. *Henwood* v. *Harrison,* L. R. 7 C. P. 606.

But, in order to constitute such malice, it is not necessary that there should be direct proof of an intention to injure the value of the property; such an intention may be inferred by the jury from false statements, exceeding the limits of fair and reasonable criticism, and recklessly uttered in disregard of the rights of those who might be affected by them. Malice in uttering false statements may consist either in a direct intention to injure another, or in a reckless disregard of his rights and of the consequences that may result to him. *Commonwealth* v. *Bonner,* 9 Met. 410. *Moore* v. *Stevenson,* 27 Conn. 14. Erle, C. J., in *Hibbs* v. *Wilkinson,* 1 F. & F. 608, 610; and in *Paris* v. *Levy,* 2 F. & F. 71, 74, and 9 C. B. (N. S.) 342, 350. Cockburn, C. J., in *Morrison* v. *Belcher,* 3 F. & F. 614, 620; in *Hedley* v. *Barlow,* 4 F. & F. 224, 231; and in *Strauss* v. *Francis,* 4 F. & F. 1107, 1114.

The only definition of malice, given by the learned judge who presided at the trial, was therefore erroneous, because it required the plaintiff to prove " a disposition wilfully and purposely to injure the value of this statue," as well as " wanton disregard of the interest of the owner." The jury, upon the evidence before them, and under the instructions given them, may have been of opinion that the defendants' statements that the plaintiff's statue was an " ingenious humbug," " a sell" and " a fraud, ' were false, reckless and unjustifiable, and had the effect of injuring the plaintiff's property, and caused him special damage; and may have returned their verdict for the defendants solely because they were not convinced that they intended such injury.

The ninth request for instructions distinctly called the attention of the court to the necessity of a definition of the legal meaning of malice in this respect. As the instructions given were erroneous in this particular, and we cannot know that the error did not affect the verdict, the plaintiff is entitled to a new

trial, in order that he may satisfy a jury, if he can, under proper instructions, that he has a good cause of action against the defendants.                                        *Exceptions sustained.*