NELLIE M. DOANE *vs.* ETHEL H. GREW.

Suffolk.    October 5, 1914. — January 20, 1915.

Present: RUGG, C. J., LORING, DE COURCY, & CROSBY, JJ.

*Libel and Slander. Evidence,* To show malice, Remoteness, Presumptions and burden of proof.

The privilege which protects the former employer of a domestic servant from liability in an action for slander in answering inquiries in regard to the character and capabilities of such former servant is confined to answers that are made in good faith and without malice in fact; and such malice in fact which destroys the defence of privilege must be taken to mean that the defamatory words, although spoken on a privileged occasion, were not spoken pursuant to the right or duty which created the privilege but were spoken from some other motive.

Where the former employer of a domestic servant answers inquiries from prospective employers in regard to the character and capabilities of such former

servant, he does not perform his whole duty to the inquirer if he confines him-self to facts of which he has personal knowledge or to giving information which he has investigated fully, and it is his duty to impart any material information that he has received, even if he has not attempted to investigate it at all, and he cannot be held liable in an action for slander for performing this duty in good faith; and, if he ought not to have believed the reported fact or was reckless and careless in believing it, this does not make him liable for giving in good faith the information that the needs of the privileged occasion called for.

In an action for slander evidence of a repetition in substance of the alleged slander is admissible to show malice.

In an action by a nursery maid against a former employer for alleged slander in answering inquiries in regard to the plaintiff's character and capabilities while in the defendant's employ, the presiding judge admitted evidence that the plaintiff had applied to two women for a position as nursery maid and had referred them to the defendant, and that in each case she afterwards had received word that her services were not required. This evidence was ad-mitted by the judge solely for the purpose of showing the defendant's state of mind toward the plaintiff. Later in the trial one of the women applied to testi-fied that she did not talk with the defendant at all, and the other of them testified that all that the defendant had said to her was that the plaintiff had been very satisfactory for two years but that the last year she had not done so well, and that this did not affect the witness in deciding not to employ the plaintiff. It was *said*, that at the time the evidence was offered it was possible that it was within the discretionary power of the presiding judge to pass upon its remoteness, so that an exception to its admission would not necessarily be sustained, but, it not being necessary to decide this question because a new trial was ordered on other grounds, it was *held*, that the evidence ought not to be admitted at the new trial.

In an action by a nursery maid against a former employer for alleged slander in answering inquiries in regard to the plaintiff's character and capabilities while in the defendant's employ, evidence, that, although the plaintiff had given the defendant a week's notice of her intention to leave, the defendant told her to "pack up and get right out as quick as you can" and later, while the plaintiff was packing, said to her, "I will call up Mr. G; I will see whether you will go or not," this can be found by the jury to have shown that the defendant was angry with the plaintiff, and such anger is sufficient evidence of malice to entitle the plaintiff to go to the jury, where she already has introduced evidence tending to show that the defendant in answering inquiries had made state-ments in regard to the plaintiff that were not in fact true.

In an action by a domestic servant for alleged slander in answering inquiries in regard to the plaintiff's character and capabilities, where the plaintiff contends that the defendant made the statements complained of with malice so that the defence of privilege is not available, it is wrong for the presiding judge to instruct the jury that "the burden is upon the defendant to show that [the words spoken by the defendant] were privileged words, for which she is not answerable." On the contrary, where the occasion is shown to have been a privileged one, the burden is on the plaintiff to prove malice.

TORT, with a declaration originally containing four counts for alleged slander of the plaintiff in charging her in substance with

having been, while in the employ of the defendant as a nursery maid, impertinent and unfit to take care of children and with having struck a child of the defendant, to which three other counts were added by amendment. Writ in the Municipal Court of the City of Boston dated February 24, 1911.

The defendant filed a motion for specifications, and the plaintiff filed specifications stating that the words of the defendant set forth in the first count were spoken to one Mrs. Hobart, that the words set forth in the second count were spoken to one Mrs. Benson and that the words set forth in the third count were spoken to one Mrs. Eldridge. Later the plaintiff was allowed to amend her declaration by adding the fifth, sixth and seventh counts, each referring to statements alleged to have been made to Mrs. Hobart with the intention of preventing her from hiring the plaintiff as a nursery maid to take care of children.

The defendant's answer contained a general denial, alleged that the statements made by the defendant concerning the plaintiff were true, and further alleged that any statements made by the defendant concerning the plaintiff were privileged communications made in response to inquiries for information by prospective employers of the plaintiff as a nurse for children in regard to the defendant's experience with and opinion of the plaintiff as such a nurse.

On appeal to the Superior Court the case was tried before *Bell,* J. At the close of the evidence the plaintiff waived the second, third and fourth counts of the declaration, so that the case went to the jury on the first, fifth, sixth and seventh counts, all of which referred to what was alleged to have been spoken to Mrs. Hobart.

The defendant asked the judge to order a verdict for the defendant on the grounds that the occasions on which the defendant had made statements concerning the plaintiff were privileged occasions, that the defendant's communications were privileged communications, that there was no evidence of malice on her part and that there was no evidence of damage under the first, fifth, sixth and seventh counts of the declaration. The judge refused to order such a verdict, and the defendant excepted.

The defendant then asked the judge to make the following rulings:

"1. On all the evidence the plaintiff is not entitled to recover.

"2. There is no evidence sufficient to justify a finding of malice on the part of the defendant, and, therefore, the plaintiff is not entitled to recover.

"3. There is no sufficient evidence of damage to the plaintiff under any counts of the declaration, and, therefore, the plaintiff is not entitled to recover.

"4. On all the evidence it cannot be found that any words spoken by the defendant to Mrs. Hobart prevented Mrs. Hobart from employing the plaintiff, and, therefore, the plaintiff cannot recover on the first, fifth, sixth or seventh counts of the declaration.

"5. There is no evidence sufficient to justify a finding that the statements made by the defendant to Mrs. Hobart were made maliciously or actuated by malice, and, therefore, the plaintiff cannot recover under the first, fifth, sixth or seventh counts in the declaration.

"6. The plaintiff cannot recover on the fifth count of the declaration because there is no allegation that the statements therein alleged to have been made were false.

"7. The plaintiff cannot recover on the sixth count of the declaration because there is no allegation that the statements therein alleged to have been made by the defendant were malicious.

"8. The plaintiff cannot recover on the seventh count of the declaration because there is no allegation that the statements therein alleged to have been made by the defendant were either false or malicious."

The judge refused to make any of these rulings, and the defendant excepted.

The defendant further excepted to the judge's admission of the plaintiff's testimony in regard to one Mrs. Pillsbury; to his admission of the plaintiff's testimony in regard to one Mrs. Felton; to his admission of the plaintiff's testimony in regard to Mrs. Benson and the latter's conversation over the telephone with the defendant; and to his admission of the testimony of Mrs. Eldridge in regard to her interview with the defendant. These matters are referred to in the opinion.

The defendant also excepted to the following portions of the judge's charge:

"Now there is stated . . . that if the answer is made maliciously or recklessly, it is not within the privilege."

"Well, did she honestly believe in the truth of what she had said, and was it in good faith, not recklessly and carelessly, but honestly and fairly, believing the truth of the statements as to the treatment of her child by Miss Doane?"

"We are trying the question whether Mrs. Grew, from the information which she received, if she received it from Mrs. MacMahon and her children, had such cause to believe that she might honestly and fairly believe that that was the truth, and believing it honestly and fairly to be the truth, stated it to others who made inquiries of her. If that was her position and if the story was false, she would be protected in making that statement, so it is not necessary, perhaps, in some views, for you to pass finally upon the question of whether Mrs. MacMahon's story is correct or not. In other views, it may be necessary, because if you take another view of Mrs. Grew's attitude toward it and think that her action in trusting the statement which she said was made to her by Mrs. MacMahon and the children, that her attitude in trusting to their statement was reckless or careless, then it may be necessary for you to determine whether the story was true, because if it was true, whether she testified to it recklessly or carelessly or not, there was no wrong done to the plaintiff."

"Now, the next question is, Mrs. Grew being appealed to in that way, did she make an honest, fair answer, not colored by any malice or improper feeling, for malice means, not the strong meaning that we ordinarily give to it, but it means any improper feeling, any desire to injure, any desire to do harm to any party, not colored or influenced by malice, but fair, honest truth, as she then believed it to be, without recklessness or improper carelessness or neglect."

In regard to the burden of proof the judge instructed the jury as follows: " The burden of proof is upon the plaintiff to establish the speaking of the words, and, if they were injurious to her, the burden is upon the defendant to show that they were privileged words, for which she is not answerable." The defendant did not except to this instruction.

The jury returned a verdict for the plaintiff in the sum of $500; and the defendant alleged exceptions.

*A. Whiteside,* (*C. Bigelow* with him,) for the defendant.

*F. J. Muldoon,* for the plaintiff.

LORING, J.    1.  The defendant's exceptions to the charge of the presiding judge raise questions as to a defendant's liability for false defamatory words spoken on a privileged occasion.

If the occasion on which slanderous words are spoken is a privileged one and the defendant (in saying what he said) was acting under the privilege created by the occasion, a defence is made out, even if what he said was not in fact true.  Where inquiries are made as to the character and capabilities of a former servant, the occasion is a privileged one.  Of that there is no question.  It is the typical case of a privileged occasion.

Where the occasion is a privileged one the plaintiff can hold the defendant liable if he proves that (in saying what he said of the plaintiff) the defendant did not in fact use his privilege. That is to say: Although the defendant (in answering questions as to the character and capability of a former servant) is protected if he was "acting in *bona fide* answer to the needs of the occasion," yet if malice in fact is proved the defendant is liable. By malice in fact is meant "the wilful doing of an injurious act without lawful excuse."  In this connection it means that (although the occasion was a privileged one) the defendant, in saying what he said of the plaintiff, was acting outside his privilege and not under it.  To prove malice in fact (that the defendant was acting outside his privilege and not under it) the plaintiff may introduce direct evidence that the defendant made the untrue defamatory statements out of hatred for the plaintiff.  That is perhaps the most common way of proving malice in fact in this connection.  But it is not the only way of proving malice in fact in this connection, namely, that the defendant was acting not under, but outside, his privilege.  In *Gott* v. *Pulsifer*, 122 Mass. 235, it was assumed that publishers of newspapers, in making statements of facts which were not true, stand on the same footing as persons asked as to the character and capabilities of a former servant.  On that assumption it was there held (in effect) that, if an article in the defendant's newspaper containing an untrue statement of fact was written for the sake of writing a brilliant article in reckless disregard of the rights of the plaintiff, malice in fact was made out.  It is now settled that the assumption

made in *Gott* v. *Pulsifer* is not law. *Burt* v. *Advertiser Newspaper Co.* 154 Mass. 238, affirming *Sheckell* v. *Jackson*, 10 Cush. 25. But on the assumption made in *Gott* v. *Pulsifer*, the decision in that case is correct. So in a case where the slanderous words uttered by the defendant on a privileged occasion are based upon what he has heard, if there is great excess in repeating what he has heard there is evidence that the defendant was not acting within the privilege which the occasion gave him, but outside it. See *Clark* v. *Molyneux*, 3 Q. B. D. 237.

Malice in fact which destroys the defence of privilege must be taken to mean that the defamatory words, although spoken on a privileged occasion, were not spoken pursuant to the right and duty which created the privilege but that they were spoken from some other motive. See in this connection Lord Blackburn in *Capital & Counties Bank, Ltd.* v. *Henty*, 7 App. Cas. 741, 787. "Duty" in this connection is not confined to obligations enforced by law. Giving information as to the character and capabilities of a former servant (for example) is not a legal obligation enforced by law. The law recognizes its existence as a social obligation which cannot be performed unless it creates a privileged occasion.

It is apparent that there are many ways of proving malice in fact in this connection, and that they cannot be enumerated in advance.

It follows from what has been said that the parts of the charge to which exceptions were taken did not properly present to ·the jury the questions to be decided by them in this case.

But the objection to one part of the charge excepted to goes· deeper than that. In one part of the charge excepted to the presiding judge in effect told the jury that the defendant was liable (in case they found that the plaintiff did not in fact abuse the defendant's child) if the defendant did not honestly believe that fact, or if believing it she did not have sufficient cause to warrant the belief but was reckless or careless in trusting to the statements made by Mrs. MacMahon and her (the defendant's) children.

· When inquiry is made of a person as to the character and capabilities of a former servant, the person to whom the inquiry is addressed would not do his whole duty if he should confine his answer to facts which he knows to be facts of his own knowledge. Nor would he do his whole duty if he should confine himself to giving information which he has fully investigated. Indeed he

would fail in doing his full duty if he should omit to impart any material information which has come to him, even if he has not attempted to investigate it at all. And Bramwell, L. J., in *Clark* v. *Molyneux*, 3 Q. B. D. 237, 244, went even farther and laid down the proposition that "a person may honestly make on a particular [privileged] occasion a defamatory statement without believing it to be true; because the statement may be of such a character that on that occasion it may be proper to communicate it to the particular person who ought to be informed of it." The person inquired of on a privileged occasion must be fair to the person making the inquiry as well as to the person about whom the inquiry is made. Where he has information (whether it has or has not been investigated by him), it is his duty to state in answer to the inquiry that he has the information, giving it (as the defendant did in the case at bar) as information concerning a fact as distinguished from a statement of the existence of the fact. Where the person to whom the inquiry is put makes a statement that he has information as to a fact (as distinguished from a statement that the fact exists) his privilege does not depend upon whether he in good faith believes the fact or whether he ought to have believed the fact or was reckless and careless in believing the fact. Where the person to whom the inquiry is put makes that kind of answer (namely that he has information as to a fact) he does not state that the reported fact is or is not a fact or that he believes or does not believe the reported fact. The person who makes the inquiry is entitled to the information which has come to the person to whom the inquiry is addressed, and the statement that information has come to him, if honestly made in answer to the inquiry, is a privileged communication. The good faith in question in that case is not good faith in believing the fact, but good faith in giving the information that the needs of the privileged occasion call for. A charge to a jury substantially the same as the charge here in question, in a case (in its legal aspects) substantially the same as the case at bar, was held to be incorrect by the English Court of Appeal in *Clark* v. *Molyneux*, 3 Q. B. D. 237.

There have been a number of cases in Massachusetts in which the question of what malice in fact means (within the rule that where malice in fact is proved the defendant is liable for false

defamatory words spoken on a privileged occasion) has been discussed. See *Remington* v. *Congdon,* 2 Pick. 310; *Bodwell* v. *Osgood,* 3 Pick. 379; *Swan* v. *Tappan,* 5 Cush. 104; *Brow* v. *Hathaway,* 13 Allen, 239; *Atwill* v. *Mackintosh,* 120 Mass. 177; *Gott* v. *Pulsifer,* 122 Mass. 235; *Billings* v. *Fairbanks,* 139 Mass. 66; *Wright* v. *Lothrop,* 149 Mass. 385; *Howland* v. *Flood,* 160 Mass. 509; *Squires* v. *Wason Manuf. Co.* 182 Mass. 137; *Robinson* v. *Van Auken,* 190 Mass. 161; *Crafer* v. *Hooper,* 194 Mass. 68; *Christopher* v. *Akin,* 214 Mass. 332; and there may be others. The decisions actually made in these cases do not seem to be in conflict. But it is not possible to harmonize all that was said when these cases were decided. This has come, to some extent at least, from an assumption that the question for the jury in such cases is always the same. But that is not so. Given the definition which has been stated above, the exact question to be passed upon by the jury in each case depends or may depend upon the form in which the defamatory words were put by the defendant, taken in connection with the knowledge or information which the defendant had as to the matter of the defamatory statements. Take an example. Suppose that bare information of a fact had come to a defendant who was inquired of with respect to the capabilities and character of a former servant and the defendant was ignorant as to the trustworthiness of the source from which the information came; if under these circumstances he should state the existence of the fact as of his own knowledge, the question to be passed upon by the jury is a very different one from that which is presented when there is evidence that the statement made by the defendant matches exactly the information or knowledge which he had received and the accuracy of the source from which that information or knowledge came. It is manifest that there are a number of intermediate cases between these two, where there is a discrepancy between the statements made and the information and the knowledge of the defendant as to the accuracy of the information. These discrepancies between the information and the statements are put as examples of one aspect only which may give rise to differences in the exact question to be passed upon by the jury in determining whether there was or was not that malice in fact which destroys the defence of privilege although the words were spoken on a privileged occasion. No rule can be laid down in

advance to cover all cases beyond the statement of the funda-
mental proposition that in the case of false defamatory words
spoken on a privileged occasion the defendant is not liable if he
spoke the words in good faith under the right or duty which the
occasion created, and that he is liable if he spoke the words from
some other motive.

The cases of *Lothrop* v. *Adams*, 133 Mass. 471; *Brown* v. *Massa-
chusetts Title Ins. Co.* 151 Mass. 127; *Fay* v. *Harrington*, 176 Mass.
270; and *Conner* v. *Standard Publishing Co.* 183 Mass. 474, relied on
by the defendant, arose under St. 1855, c. 396 (and the re-enact-
ments of that statute), which extended to civil actions for libel the
provisions which theretofore had been applicable to criminal prose-
cutions for libel (St. 1826, c. 107, § 1; Rev. Sts. c. 133, § 6).   By
the original act (St. 1855, c. 396), it was provided that in a civil
action for libel, truth was a defence "unless malicious intention shall
be proved."   The wording of the act has been changed, so that in
R. L. c. 173, § 91, the provision is: "The truth shall be a justification
unless actual malice is proved." These cases are not decisive here.

2.  The evidence, which was excepted to, of the repetition of
this (or of a substantially similar) slander made to Mrs. Eldridge
and Mrs. Benson was admissible to prove malice, although it was
not ground for an action because both Mrs. Eldridge and Mrs.
Benson, in procuring the repetition of the slander, confessedly
acted as the agent of the plaintiff and at her request.   *Howland* v.
*Blake Manuf. Co.* 156 Mass. 543.   It is established at common
law that repetition of substantially the same slander may be
shown in evidence for the purpose of proving malice to enhance
damages.  *Bodwell* v. *Swan*, 3 Pick. 376.  *Baldwin* v. *Soule*, 6 Gray,
321.  *Robbins* v. *Fletcher*, 101 Mass. 115.

3.  But we are of opinion that the plaintiff should not have
been allowed to introduce in evidence that on applying to Mrs.
Pillsbury and to Mrs. Felton for a position as nurse and on re-
ferring them to the defendant she received word in each case that
her services were not required.  This was admitted for the purpose
of showing the defendant's state of mind toward the plaintiff and
for no other purpose.  But in our opinion it was too remote.
While it is a possible inference from these facts (without more)
that in each case the plaintiff failed to get the position because of
the reference given by the defendant, that inference is so remote

that the evidence should not have been admitted. The course of the trial of this case is an example. When Mrs. Pillsbury was later put upon the stand, she testified that she did not talk with the defendant at all. Thereupon the plaintiff's counsel stated that he would take her at her word. And Mrs. Felton testified that although she did apply to the defendant all that the defendant said was that the plaintiff had been very satisfactory for two years but the last year she had not done so well; and that this did not affect her (the witness) in deciding not to employ the plaintiff. Whether the exception to the admission of this evidence would have been sustained it is not necessary to decide. It was perhaps within the discretion of the presiding judge to admit it in evidence. This evidence ought not to be admitted at the new trial which has become necessary.

4. The ruling asked for by the defendant, that there was no evidence to warrant a finding of malice on the part of the defendant, was refused rightly. The plaintiff testified that on the day on which she left the defendant (although she had given a week's notice of her intention to leave), the defendant first told her to "pack up and get right out as quick as you can, — in an hour if you can," and later (while she was packing) that the defendant said to her, "I will call up Mr. Grew; I will see whether you will go or not." One explanation of this inconsistent conduct on the defendant's part is that she was beside herself with anger. The fact that the defendant was angry with the plaintiff (if the jury adopted this explanation of the plaintiff's testimony and found that she was angry with the plaintiff) was sufficient to enable the plaintiff to go to the jury on the question whether the defendant (in making statements as to the plaintiff which were not in fact true — if the jury found that she did make statements not in fact true —) was acting under the privilege which the occasion created or outside it.

5. Although Mrs. Hobart denied it on the witness stand, the jury were at liberty to find that she refused to take the plaintiff as a nurse because of the statements made to her by the defendant. The exception taken to the refusal to give the third ruling requested must be overruled.

6. The sixth, seventh and eighth requests were aimed at the sufficiency of the fifth, sixth and seventh counts under the rule of practice applied in *Murphy* v. *Russell,* 202 Mass. 480. These

counts would seem to be counts for maliciously and without justifiable cause preventing the employment of the plaintiff by Mrs. Hobart under the doctrine of *Moran* v. *Dunphy,* 177 Mass. 485 (a case of interference with an employment actually in existence), applied to the prevention of getting employment in place of interfering with an actual employment then in existence. With the exception of one incidental reference to these counts in the charge (which is not of consequence), the case was left to the jury as an action of slander. That is to say the case in fact was left to the jury on the first count. We do not know whether the fifth, sixth and seventh counts (as distinguished from the first count) will be relied upon at the new trial. It is not necessary at this time to consider whether the allegations of these counts make out a case under the doctrine on which they seem to be founded.

7. It is necessary to state (on account of the contention made by the defendant in support of the exception to the judge's refusal to direct a verdict for the defendant) that Mrs. Hobart herself testified to some of the statements set forth in the first count.

8. The judge was wrong in charging the jury that "the burden is upon the defendant to show that they were privileged words, for which she is not answerable." If the occasion is a privileged one the burden is on the plaintiff to prove malice. *Brow* v. *Hathaway,* 13 Allen, 239. *Clark* v. *Molyneux,* 3 Q. B. D. 237. No exception was taken to this instruction, but it becomes necessary to refer to it in view of the fact that there is to be a new trial.

We believe that we have covered all the contentions made by the defendant. We make this statement in this way because the defendant has not addressed her argument specifically to the exceptions which she took. The entry must be

*Exceptions sustained.*

## MEMORANDUM.

On the twenty-seventh day of January, 1915, the Honorable James Bernard Carroll, who had been one of the Justices of the Superior Court since December 16, 1914, was appointed a Justice of this court and sat as a single Justice at Springfield on February 1, 1915, first taking his seat with the full court at Boston on March 1, 1915.