## WILLIAM G. CHILDS *vs.* GEORGE P. ERHARD.

Suffolk. March 5, 1917. — April 25, 1917.

Present: RUGG, C. J., BRALEY, DE COURCY, PIERCE, & CARROLL, JJ.

*Libel,* Privileged communications. *Evidence,* Of ill will. *Practice, Civil,* Exceptions.

If the treasurer of a corporation, when asked to do so by one formerly employed by the corporation as a shop foreman and by an agent through whom the former employee was seeking employment, answered a request for a report as to the former employee by stating in writing that he had been in the corporation's employ for eight years, had had seventy-five or eighty men under him, was an excellent mechanic, sober and a hard worker, and was dismissed for an act of insubordination, such communication is privileged and, even if the cause of dismissal alleged was not the true cause, the former employee cannot maintain an action of libel against the treasurer unless it be shown that the mis-statement was made in bad faith and through ill will.

At the trial of such an action for libel, evidence which tends merely to show that, immediately previous to the plaintiff's dismissal and on the same day, the defendant had complained to him that proper results were not being obtained in his department and had seemed excited at the interview, and that, after the plaintiff had given an explanation, the defendant as he went away had "started to curse and swear," if the plaintiff testifies that the profanity was not directed to him but had reference to other employees, is not evidence warranting a finding that the privileged communication above described was made in bad faith or actuated by ill will.

The exclusion, at such trial, of the testimony of a witness, who did not hear the conversation between the plaintiff and the defendant above described but saw the defendant's actions while talking, as to whether the defendant appeared to be angry, cannot be said to have been wrong.

At the same trial, the plaintiff was not harmed when in cross-examination, in answer to a question, whether he had any doubt that the defendant wrote the facts as they were in his estimation, he answered, "It must have been so."

TORT for libel. Writ dated April 25, 1914.

In the Superior Court the case was tried before *Lawton,* J. The material evidence is described in the opinion. At the close of the evidence the judge ruled that the alleged libellous communication was privileged and that there was no evidence to warrant the jury in finding that there was express malice in its publication; and he thereupon ordered a verdict for the defendant; and the plaintiff alleged exceptions.

*J. F. Hurley,* for the plaintiff.

*J. M. Hoy,* for the defendant.

CARROLL, J.  This is an action for libel.  The plaintiff, previous to February, 1913, when his employment ceased, was a shop foreman for the Stafford Company.  The defendant was the treasurer of the company.  On February 8, 1914, the plaintiff answered an advertisement of Charles P. Raymond, a mill employment agent, for a machine shop foreman and made application for the position. Raymond wrote the defendant, in accordance with his custom, enclosing a reference report and asking for information regarding the plaintiff.  No reply was sent to this letter.

February 20, the plaintiff wrote to the defendant calling his attention to the letter from Raymond, "asking for a recommendation concerning me while in your employ as foreman," and saying "I could consider it a favor if you would give me a reference covering the number of years I held the position."  Raymond again wrote the defendant on February 19, 1914, and received a written reply.  The plaintiff claims he was libelled in this letter, alleging the libellous words to be "he was dismissed [meaning discharged from the Stafford Company] for an act of insubordination."  He further states in his declaration, "By reason of all which he was prevented from securing a position as foreman of a machine shop, the applications by him for employment as such foreman or machinist refused to be entertained by the mill employ agency, an agency that does a large business with mills and factories in securing positions such as the plaintiff is competent of filling. All to his great damage."

There was evidence tending to show that on the morning of the day the plaintiff ceased to be employed by the Stafford Company, the defendant met him in the machine shop and complained to him that proper results were not being obtained there, to which the plaintiff replied, the men were not to blame, as the foundry was not large enough to supply castings for the machine shop.  At this interview the defendant was to some extent excited, and as he went away "started to curse and swear."  The plaintiff and defendant never had any trouble or quarrel, and the defendant's profanity was not directed towards the plaintiff but had reference to the other employees, — as the plaintiff testified "He had no reference to me; it was the help."  Immediately after this interview the defendant directed the plaintiff's discharge.

The jury could have found that on the afternoon of this day, while the plaintiff's immediate superintendent (not the defendant) was in the room, the plaintiff had a conversation with him, complained of the conduct of the defendant's son, and said that unless it stopped he would get through.  To this complaint his immediate superintendent made no reply and the plaintiff at once left the shop.  The defendant, when notified later by the plaintiff's attorney that the plaintiff was not dismissed for an act of insubordination, made an investigation.  He was informed of the facts relating to the termination of the plaintiff's employment, and on March 2 wrote to Raymond telling him in substance that while instructions for his discharge were given, "A little later, during a dispute with the superintendent, Mr. Childs abruptly announced that he was through and walked out."  Raymond testified that the defendant's letter of February 25 was not the reason for his failure to recommend Childs for the position; that his work had not been heavy enough and he was looking for a "larger man;" the plaintiff had had charge of only seventy-five or eighty men, and the position called for a man capable of directing one hundred and eighty to two hundred men; the plaintiff had worked as foreman in one place, and he desired a man of wider experience; the fact that he was or was not dismissed for insubordination, was not the reason he did not recommend him.  The judge directed a verdict for the defendant.

It was undisputed that the information sought from the defendant concerned a former employee and was given at the request of the plaintiff and his agent Raymond.  The occasion was clearly a privileged one and if the defendant stated that the plaintiff was "dismissed for an act of insubordination" and was at the time "acting in *bona fide* answer to the needs of the occasion," without actual malice, a verdict properly was directed in his favor.  *Doane* v. *Grew*, 220 Mass. 171.  It being established that the occasion was a privileged one, the defence was made out unless the plaintiff offered some evidence tending to show an abuse of the privilege, or malice in fact.  *Dale* v. *Harris*, 109 Mass. 193.  We find no evidence indicating that the defendant went beyond the privilege created by the occasion.  There was nothing in his speech or conduct showing hostility or ill will toward the plaintiff, and there was no fact or statement tending to show that he was moved by

malice in answering the letter of Raymond and informing him that the plaintiff had been in the employ of the company for eight years, had seventy-five or eighty men under him, was an excellent mechanic, sober and a hard worker, and was dismissed for an act of insubordination.

There was no evidence of threats, or of any quarrel or rivalry signifying actual malice on the part of the defendant. The plaintiff admitted that the defendant had not spoken to him more than a "dozen times" during the ten years he was at work at the shop, and, except on the day when he left, had not spoken to him before for several months; that "he never had any words, quarrel or trouble with the defendant." The defendant testified there was no hostile feeling on his part toward the plaintiff.

There was evidence that the defendant, on the day the plaintiff's relations with the company ended, "threw his arms up in the air," and when leaving him started to "curse and swear." If it appeared that the defendant swore at the plaintiff, or cursed him, this would undoubtedly be evidence of ill will toward him. See *Doane* v. *Grew*, 220 Mass. 171, 181. On the other hand the defendant did not swear at the plaintiff, or curse him; his remarks were not directed toward him, he was talking about the help and the product of the plaintiff's department, — as the plaintiff admitted when examined on the point, "He had no reference to me. It was the help."

If a master is asked concerning the character and capabilities of a former employee, he does not exceed the privilege and is not guilty of malice if some of his statements are untrue. There must be bad faith, such as knowledge that the fact stated was false, or making use of the occasion to gratify ill will or a desire to injure. The author must be prompted by some motive other than the mere desire to fulfil the duty caused by the occasion, and if he uses the words in good faith for this purpose he is protected.

There was no evidence to show bad faith on the part of the defendant, or knowledge that the plaintiff was not discharged for insubordination. The defendant fully believed when he wrote the letter in question, that the plaintiff was discharged for this reason, according to his instructions, and there was nothing in the evidence to contradict this (see *Billings* v. *Fairbanks*, 139 Mass. 66, 67), or to show the defendant knew the plaintiff had left with-

out being discharged. As soon as the question of a possible error was called to his attention, he at once wrote the letter of March 2, explaining at length why Childs ceased to work for the Stafford Company, and saying, he "is a skilled and competent workman and we have no desire to interfere with his receiving employment." The letter containing the language alleged to be libellous was honestly written in answer to the inquiry, and the defendant in good faith sought to give the information called for and which the "needs of the privileged occasion called for." *Doane* v. *Grew, supra. Fresh* v. *Cutter,* 73 Md. 87. See *Child* v. *Affleck,* 9 B. & C. 403. *Weatherston* v. *Hawkins,* 1 T. R. 110.

A witness was asked by the plaintiff whether or not Mr. Erhard appeared to be angry, referring to what took place the morning of the interview with the defendant, as bearing on the question of the defendant's ill will toward the plaintiff. His anger at the time, if directed toward the plaintiff, was admissible; but the witness stated he could not hear the conversation, and in view of the plaintiff's testimony that Erhard's profanity was not intended for him but was directed toward the help, we cannot say that the judge was wrong in excluding the evidence.

As the communication was privileged, as matter of law, and as there was no evidence that the privilege was abused, the plaintiff was not harmed by his answer in cross-examination to the question, "You have no doubt he [the defendant] wrote these facts, as you put it, as they were in his estimation,—you have no doubt about that, have you?" his answer being, "It must have been so."

We find it unnecessary, in view of what has been said, to consider the other exceptions.

The judge was right in directing a verdict for the defendant, the occasion was privileged and there was no evidence of actual malice.

*Exceptions overruled.*