O'Toole, J.
This action arises out of a WBZ-TV4 I-Team report on the automobile body repair industry that was broadcast in May 1989. The I-Team report addressed what it said was a conflict of interest between automobile body shop owners and appraisal services for insurance companies. The plaintiffs, Richard Dulgarian (“Dulgarian”), Northeast Auto & Truck Appraisal (“Northeast”) and National Auto Body and Sales, Inc. (“National”), allege that statements in the report made by the defendant, Gregory Stone (“Stone”), a reporter for Westinghouse (“WBZ”), were defamatory. The plaintiffs seek damages for slander, libel, interference with business relations, injurious falsehood, and violation-of G.L.c. 93A, §11. The defendants have moved for summary judgment pursuant to Mass.R.Civ.P. 56(c). For the reasons set forth below, defendants’ motion for summary judgment is allowed.
BACKGROUND
The following facts are not in dispute. On May 23, 1989, WBZ broadcast one segment of a three-part investigative report addressing an alleged conflict of interest between automobile shop owners and appraisal services for insurance companies. The plaintiffs’ operations were part of the subject matter of broadcast. The relevant portion of the text of the broadcast follows:
Stone: Our investigation uncovered another area of potential abuse involving appraisal services. Those services do damage estimates on cars after collisions. The law says it’s a conflict of interest for an appraiser to use a body shop for drive-in estimates. Here’s why: There could be collusion whereby the appraiser could steer business to the nearby shop. That could create an unfair advantage.
On a recent Saturday we saw car after car pulling into an Allstate drive-in appraisal service operated out of this body shop in Lowell... The owner of the shop insists this is perfectly legal.
Dulgarian: People have a choice. They don’t have to come here. We don’t ask them to come here. They’re given a choice of shops by the insurance company and they can go where they want.
Stone: In addition, Dulgarian has his own independent appraisal service housed in another part of the building.
Dulgarian: They’re two individual businesses. They pay taxes differently. They’re registered differently. OK?
*26 Stone: We showed videotapes of Dulgarian’s operations to a former member of the appraisers board who helped write the conflict of interest regulations, and to this current member. Both said there appeared to be a violation of the law.
In your opinion, does this present a conflict of interest?
Jansson (expert): It certainly does, in my opinion.
Stone: We found similar set-ups at two other locations in Lowell, with body shops and appraisal services owned by the same people. Here, at Towne Auto Body, in the same building, and at American Auto Body, in two buildings on the same property. Our experts said both locations appear to be conflicts of interest. So what does this mean to the consumer? Possibly less competition among body shops, and higher prices for repairs, as the man who helped write the law explains . . .
Bisceglia (expert): We had hoped to have an open market, with no undue pressure put on the consumer to try to force him to go somewhere. Let him use the whole marketplace to pick his own bodyshop without someone trying to steer him or lowball to a specific shop.
Stone:. . . Late last week, Allstate told us they have stopped using the National Auto Body site for drive-in appraisals because they also have concluded there was a conflict of interest. As for the two other appraisal operations cited in our report, American denies it has a conflict of interest and Acme refused to comment. Tomorrow we’ll show you how cutting repair costs could compromise safety.
DISCUSSION
Summary judgment shall be granted where there are no material facts in genuine dispute and the moving party is entitled to judgment as a matter of law. Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Community National Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass.R.Civ.P. 56(c). The moving party bears the burden of affirmatively demonstrating that there is no triable issue and that it is entitled to judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). With respect to any claim on which the party moving for summary judgment does not have the burden of proof at trial, it may demonstrate the absence of a triable issue either by submitting affirmative evidence that negates an essential element of the opponent’s case or “by demonstrating that proof of that element is unlikely to be forthcoming at trial.” Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991); accord, Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). “If the moving party establishes the absence of a triable issue, the party opposing the motion must respond and allege specific facts which would establish the existence of a genuine issue of material fact in order to defeat a motion for summary judgment.” Pederson v. Time Inc., supra at 17.
Summary judgment procedures are highly favored in defamation cases. King v. Globe Newspaper Co., 400 Mass. 705, 708 (1987), Appleby v. Daily Hampshire Gazette, 395 Mass. 32, 37 (1985). “Allowing a trial to take place in a meritless case “would put an unjustified and serious damper on freedom of expression.’ ’’ Appleby, supra at 37, quoting National Ass’n of Gov’t. Employees, Inc. v. Central Broadcasting Corp., 379 Mass. 220, 233 (1979).
I. Defamation
In Counts I and II of the complaint, the plaintiffs allege that they were libeled and slandered by statements made by Stone and broadcast by WBZ. The defendants respond that the statements at issue are constitutionally protected speech and not actionable.
Not all derogatory statements published about a person are actionable as defamation. In general, the statement must assert, either expressly or by reasonable implication, a fact about the plaintiff. Statements that are opinions are not actionable unless the opinion is apparently based on defamatory facts which seem to be known to the speaker but which are not disclosed to the listener, so the listener is led to infer that those facts are true. See Lyons v. Globe Newspaper Co., 415 Mass. 258, 262 (1993). On the other hand, if the opinion expressed is based on facts which are disclosed, it may not be the basis for a defamation action, “no matter how unjustified and unreasonable the opinion may be or how derogatory it is." Id.
The statements made about the plaintiffs in the defendants’ broadcast fall within this protected category. They are opinions about whether Dulgarian’s operation of an appraisal service and an automobile body repair shop in close proximity to one another constitutes a conflict of interest forbidden by state regulation.
Recognizing the important distinction for defamation purposes between facts and opinions, the plaintiffs characterize the statements they say have harmed them as facts. They are not. In fact there can be no genuine contention that the facts disclosed were untrue.
The plaintiffs assert that the defendants misstated the impact of the conflict of interest regulation and that this was a misstatement of fact. Rather, what the defendants did was summarize the regulation. The summary plausibly conveyed the implicit statement that the regulation applied to the plaintiffs’ activities. If it did, that statement was an opinion about the applicability of the regulation, not an assertion of fact.
Other claimed misstatements of fact are semantic quibbles. It is not a “false fact” for purposes of a defamation claim for the reporter to have said that he saw cars “pulling into” the Allstate Drive-In Appraisal Service when actually the cars were driving up to the *27 curb where there was a sign that said Allstate Drive-In Appraisal Services. In the context in which the statement was made, there is not a material or substantial difference between “pulling into" and “pulling up to” the appraisal service. The point made was that the appraisal service was doing a brisk business. The plaintiffs do not say that fact is Untrue. See Jones v. Taibbi, 400 Mass. 786, 793, 800 (1987).
The plaintiffs also complain of the statement that “Allstate told us they have stopped using the National Auto Body Site for drive-in appraisals because they also have concluded that there was a conflict of interest.” That statement asserts two facts: (1) that Allstate had concluded there was a conflict of interest, and (2) that Allstate had told that to the defendants. The plaintiffs do not offer to prove that either fact was untrue. See Freidman v. Boston Broadcasters, Inc., 402 Mass. 376, 381 (1988). Rather, what they complain of is the opinion — the defendants’ and Allstate’s— that a conflict existed.
Finally, rhetorical hyperbole is not actionable. National Ass’n of Government Employees, Inc. v. Central Broadcasting Corp., 379 Mass. 220, 229-30 (1979); Phantom Touring, Inc. v. Affiliated Publications, 953 F.2d 724, 728 (1st Cir. 1992). The title to the I-Team Report, "Highway Robbery,” was figurative and hyperbolic. Phantom Touring, Inc., supra at 728 (phrases such as: “rip off,” “a fraud,” “a scandal” and “a snake oil job” are protected hyperbole and therefore not actionable).
II.Interference With Business Relations
In Count III, the plaintiffs allege that the defendants by broadcasting the I-Team Report intentionally induced or caused third persons not to enter into or continue business relations with the plaintiffs. They make specific reference to interference with their business relationship with Allstate Insurance Company.
In order to make out a prima facie case for intentional interference with business relations, a plaintiff must prove that: (1) he had a contract with a third party; (2) the defendant knowingly induced the third party to breach that contract; (3) the defendant’s interference, in addition to being intentional, was improper in motive or means; and (4) the plaintiff was harmed by the defendant’s actions. G.S. Enterprises, Inc. v. Falmouth Marine, Inc., 410 Mass. 262, 272 (1991) (citing United Truck Leasing Corp. v. Geltman, 406 Mass. 811, 812-17 (1990)). Assuming that the plaintiffs had a contract with Allstate, that the defendants intentionally induced Allstate to breach that contract and that the plaintiffs were harmed, the plaintiffs cannot as a matter of law establish that the interference, accomplished by broadcasting the I-Team Report, was improper. On the contrary, the broadcast of the I-Team Report served the proper purpose of reporting on a newsworthy event.[3]
III.Injurious Falsehood
In Count V, the plaintiffs allege that the defendants disparaged their businesses by means of an injurious falsehood. To establish a prima facie case for injurious falsehood, a plaintiff must prove: (1) that the defendant made a false statement; (2) with malice; (3) disparaging the plaintiffs property; and (4) that the plaintiff was harmed by the defendant’s actions. Gott v. Pulsifer, 122 Mass. 235, 239 (1877); McDonald v. Green, 176 Mass. 113, 114 (1900); Restatement (Second) of Torts §623A-624 (1977). As previously determined, the defendants’ broadcast consisted of “statements of fact” and “opinions based on disclosed facts.” Statements of fact are only actionable if they are false. The plaintiffs offer no proof that any statement of fact published by the defendants was false.
It is unsettled whether the requirement of a “false” statement excludes liability for "opinions based on disclosed facts.” W. Prosser, Torts §128, at 697 (5th ed. 1984). However, considering the fact that injurious falsehood bears such a close relationship to defamation and considering the fact that the First Amendment protects “opinions based on disclosed facts” in defamation actions,[4] it is only logical that the same protection should be given to such opinions in actions for injurious falsehood. Accordingly, such opinions are protected speech and not actionable.
IV.Unfair and Deceptive Trade Practices, G.L.c.93, §11
The plaintiffs also allege that the defendants committed unfair and deceptive trade practices when they broadcast the I-Team Report. The short answer is that there is no reason to conclude that defamation, even if proved, constitutes an “unfair or deceptive act” within the scope of G.L.c. 93A, §2 where it is published by a news agency (as distinguished, for example, from a competitor of the plaintiff). Chapter 93A does not apply to such an event.
ORDER
For the foregoing reasons, it is hereby ORDERED that the defendants’ motion for summary judgment is ALLOWED.

 In Count III, the plaintiffs also allege that the defendants negligently induced or caused third parties not to enter Into or continue business relations with the plaintiffs. Massachusetts does not recognize the tort of negligent interference with business relations.

 Injurious falsehood refers to the disparagement of one's property while defamation refers to the disparagement of one’s reputation.