Brassard, J.
INTRODUCTION
Defendants Museum of Science (“Museum”), John T. Curley (“Curley”), Linda M. Johnson (“Johnson”), and Britton O’Brien (“O’Brien”) move for summary judgment on all nine counts of libel, pursuant to Mass.R.Civ.P. 56. Defendants contend that they are entitled to judgment as a matter of law because the plaintiff Nabil Khalil (“Khalil”) has presented insufficient evidence to support the essential elements of his case and to show that the defendants abused their conditional privilege. The court heard this matter on July 25, 2000. For the following reasons, the defendants’ motion for summary judgment is ALLOWED.
BACKGROUND
Khalil, a discharged former employee of the Museum who worked as a shift supervisor in the Museum’s parking garage, alleges nine counts of libel arising from suspension and termination notices (“Notices”) he received from the Museum. The Museum is a non-profit corporation in the primary business of operating and maintaining a science museum for public use and whose principal place of business is situated at Science Park, Boston, Massachusetts. Khalil takes issue with the following statements from the suspension and termination notices (respectively). “There is reason to believe that you have been engaged in inappropriate conduct and practices in the daily operations of the Garage.” “It is the consensus of this group that you have been involved in the misappropriation of Museum funds, falsification of Museum records, and violation of Garage Unit procedures.”
In August 1993, Curley, the Museum’s Director of Security and Garage, received an anonymous telephone message on his answering machine regarding theft in the parking garage. As a result of this tip, Curley asked security shift leader, Bohdan Zaremba (“Zaremba”), to conduct an investigation. After spending almost four full months analyzing the documentation of the parking garage transactions, Zaremba prepared a report (of more than sixty pages in length) detailing the results of his investigation (“Zaremba Report”). Zaremba concluded that four garage attendants/cashiers used two different methods to steal cash from the garage at times when Khalil was on duty as shift supervisor. Zaremba also concluded that Khalil would then falsify the supervisor cover sheets to mask the theft.
According to the Zaremba Report,, one method of stealing they used was to process cash transactions as “validated” free tickets and to pocket the money collected from the customer. The missing tickets processed as validated transactions were noted only when Khalil was the on-duty supervisor and only when the attendants were working. According to Zaremba, the other method used to steal money from the Museum was to obscure the information on the ticket by jerking the ticket from the machine while it was printing. This created a long blurred line or “bar” on the ticket. Zaremba determined that “bar” tickets occurred only with transactions processed as validated/free and only when the four attendants worked the booths. The Museum contacted Wescor, the company which serviced the machines, to confirm Zaremba’s findings. Wescor confirmed that the “bar” tickets were not the result of a malfunction, but were deliberately made by the cashiers.
The three specimen cover sheets in the Zaremba Report are all unsigned and otherwise lacking in notation as to authorship. Khalil maintains that he never filled out the supervisor’s cover sheets. Khalil further maintains that Curley knew that Lewis Wegman (“Wegman”), the Museum’s garage coordinator, filled out the cover sheets.
On February 8, 1994, Zaremba presented his report to Curley and members of Museum management, including Johnson, the Museum’s Vice President of Visitor Services and Community Relations. O’Brien, the Museum’s Vice President of Human Resources, also attended the meeting. Following this meeting, the Museum’s Finance Department conducted an additional review of the garage revenues. The audit confirmed that significant amounts of garage revenues had been drained from the garage during the period investigated. The Finance Department concluded that revenue loss occurred and the only explanation was theft.
*300 In March 1994, the Museum met with its insurance carrier, Royal Insurance, to discuss the loss of garage revenues. The insurance company determined that the Museum had a valid claim for theft and reimbursed the Museum for a portion of its financial loss, pursuant to the theft provision in its insurance policy.
On April 10, 1994, O’Brien, Curley, and Johnson met with Khalil to discuss the Museum’s investigation and findings. Khalil did not offer any explanation for thé discrepancies between the various garage documents. He maintains that he was not provided with an opportunity to do so. The individual defendants presented Khalil with a notice of suspension. They also met separately with three of the four attendants. They did not meet with the fourth attendant because he had already been discharged by the Museum for falsifying time records.
On April 13, 1994, the individual defendants met with Wegman, whose employment with the Museum had ended prior to the completion of Zaremba’s investigation. During the meeting, they asked him about the missing tickets and garage procedures. Wegman denied having any knowledge of the missing tickets or any wrongdoing.
Between April 10 and April 19, 1994, the individual defendants continued to review the Zaremba Report and the other findings of its investigation. Khalil did not contact the Museum to explain the discrepancies during this time period. O’Brien and Johnson decided to discharge Khalil effective April 19, 1994. Curley notified Khalil by telephone. Curley, O’Brien, and Johnson jointly signed a termination notice on that date and sent it to Khalil via certified mail.
After receiving his termination notice, Khalil telephoned Linda Lamonikos, Manager of Compensation and Benefits at the Museum (“Lamonikos”), to inquire as to the status of his employee benefits, including his 401(K) plan and his health benefits. According to Khalil’s affidavit, during the course of the conversation, Lamonikos revealed to Khalil that she did see copies, in his personnel file, .of the Notices and expressed that she was terribly sorry and would do whatever she could regarding his benefits. Upon hearing these remarks, Khalil became immediately deeply ashamed, angry, and offended.
LEGAL ANALYSIS
Summary judgment is appropriate when no material facts are in dispute and the moving party is entitled to judgment as a matter of law. Highlands Ins. Co. v. Aerovox, 424 Mass. 226, 232 (1997); Mass.R.Civ.P. 56(c). A party moving for summary judgment who does not have the burden of proof at trial must either submit affirmative evidence negating an essential element of the non-moving party’s claim or demonstrate that the non-moving party’s evidence is insufficient to establish its claim. Kourouvacilis v. General Motors Corp., 410 Mass. 706, 711 (1991). An adverse party may not defeat a motion for summary judgment by resting merely on the allegations and denials of its pleadings, but must set forth specific facts with affidavits, deposition transcripts, answers to interrogatories or admissions on file showing that there is a genuine issue of material fact for trial. LaLonde v. Eissner, 405 Mass. 207, 209 (1989); Mass.R.Civ.P. 56(c).
Summary judgment is favored in defamation cases. See Dulgarian v. Stone, 420 Mass. 843, 846-47 (1995); Mulgrew v. Taunton, 410 Mass. 631, 632 (1991); ELM Med. Lab., Inc. v. RKO Gen., Inc., 403 Mass. 779, 786 (1989); King v. Globe Newspaper Co., 400 Mass. 705, 708 (1987), cert. denied, 485 U.S. 940 and 962 (1988); Cefalu v. Globe Newspaper Co., 8 Mass.App.Ct. 71, 74 (1979). In ruling on the motion, the judge should consider the evidence with an indulgence in the opposing party’s favor. Beal v. Board of Selectmen of Hingham, 419 Mass. 535, 539 (1995); Parent v. Stone & Webster Eng’g Corp., 408 Mass. 108, 113 (1990); Conley v. MBTA, 405 Mass. 168, 173 (1989).
The defendants are entitled to judgment as a matter of law on the nine libel counts because Khalil has presented insufficient evidence to support the essential elements of his case and to show that the defendants abused and lost their conditional privilege. Khalil has presented insufficient evidence to meet the primafacie case for libel: 1) a written defamation, 2) of and concerning the plaintiff, 3) made public and 4) false, or if the defamatory writing was true, that it was written with actual malice and 5) that the plaintiff was damaged. See McAvoy v. Shufrin, 401 Mass. 593, 597 (1988); Stone v. Essex County Newspapers, Inc., 367 Mass. 849, 858 (1975); Brauer v. Globe Newspaper Co., 351 Mass. 53, 56 (1966); Richard W. Bishop, Prima Facie Case — Proof and Defense §42.1, at 632-33 (1997 & Supp. 1999). Khalil has failed to present sufficient evidence to establish the publication element of his case.
PUBLICATION ELEMENT
There must be a publication of the defamatory matter, meaning that it must have been communicated to someone other than the plaintiff. See Stone, 367 Mass. at 858. There is no requirement that the statement be communicated to a large number of people. Brauer, 351 Mass, at 56. It is enough that it is communicated to a single individual other than the one defamed. Id. However, there can be no publication if libelous words are communicated to the plaintiff alone. See Economopoulos v. A.G. Pollard Co., 218 Mass. 294 (1914). A libelous remark is “published” if a defendant hands or causes a writing to be delivered to some third person and the third person reads and understands the contents (or if the defendant reads aloud the writing to some third person who listens and understands). Arsenault v. Allegheny Airlines, Inc., 485 F.Sup. 1373, 1379 (D.Mass), aff'd, 636 F.2d 1199 (1st Cir. 1980), cert. denied, 454 U.S. 821 (1981), *301 (applying Massachusetts law) citing Bander v. Metropolitan Life Ins. Co., 313 Mass. 337, 349 (1943).
The suspension and termination notices were not published to any third party. The suspension notice was hand delivered to Khalil in a private meeting. The termination notice was mailed to him via certified mail to his home. Although Khalil may have later shown the Notices to other people, including his wife, that is not evidence of the defendants’ publication.
Viewing the facts in the light most favorable to Khalil, the strongest argument for the Notices being published relates to an incident involving Khalil’s interaction with a human resources employee of the Museum. After receiving his termination notice, Khalil telephoned Lamonikos to inquire as to the status of his employee benefits, including his 401(K) plan and his health benefits. According to Khalil’s affidavit, during the course of that conversation, Lamonikos revealed to Khalil that she did see copies, in his personnel file, of the Notices, and expressed in further response, that she was terribly sorry and would do whatever she could regarding his benefits.
Assuming Lamonikos reviewed the Notices, Khalil fails to establish that the defendants published them to her. There is insufficient evidence to show that any of the defendants handed or caused a writing to be delivered to Lamonikos or any third person. See Arsenault, 485 F.Sup. at 1379. The Museum merely put copies of the Notices in Khalil’s personnel file, in compliance with the procedures mandated by law. Under Massachusetts law, the Museum was required to maintain copies of the Notices in Khalil’s personnel file for at least three years. M.G.L.c. 149, §52C.
Khalil argues that the Museum should have kept the file in a more confidential sub-file of the mainstream personnel file. Although this is a creative suggestion, such a procedure is not required by law and would be somewhat burdensome. Moreover, such a procedure might result in employers being held liable for negative comments contained in employee evaluations properly filed in an employee’s personnel file.
Thus, Khalil has failed to present sufficient evidence to establish the publication element of libel.
CONDITIONAL PRIVILEGE
Assuming arguendo that Khalil could establish all of the elements of a prima facie case of libel, the defendants are still entitled to summary judgment because they possessed a conditional privilege to make statements about Khalil, which he cannot show was abused. As an employer, the Museum has a conditional privilege to disclose defamatory information concerning an employee when the publication is reasonably necessary to serve the employer’s legitimate business interest in determining the fitness of an employee to perform his job. Bratt v. Int’l Business Mach. Corp., 392 Mass. 508, 512-13 (1984). Keeping suspension and termination notices in an employee’s personnel file, in compliance with Massachusetts law, meets this standard.
However, this privilege is conditional and can be lost. The defendants’ conditional privilege can be lost if Khalil can demonstrate that the: 1) defendants engaged in an unnecessary, unreasonable, or excessive publication of the defamatory matter; or 2) defendants published the material recklessly or with malice. See Bratt, 392 Mass. at 514-15. There are two ways to establish malice in this context. “Malice” means that the defamatory words, although spoken on a privileged occasion, were not spoken pursuant to the right and duty which created the privilege, but were spoken out of some base ulterior motive, intending to injure the plaintiff. See Doane v. Grew, 220 Mass. 171, 176 (1915). It is “the willful doing of an injurious act without lawful excuse.” Id. at 176. Alternatively, “actual malice” consists of: 1) publication with knowledge of falsity, or 2) publication with reckless disregard of the truth. See Bratt, 392 Mass. at 514-15.
In this case, it is clear that the defendants did not engage in an unnecessary, unreasonable, or excessive publication. Khalil has not demonstrated that any of the defendants acted out of a base ulterior motive to injure him. Additionally, there is insufficient evidence to show that the defendants published the material recklessly or with actual malice.
Khalil contends that the defendants had knowledge of the falsity of the defamatory statements and/or recklessly publicized them. Khalil alleges that Curley knew that it was not Khalil who filled out the cover sheets. At the April 10, 1994 meeting when he was given his suspension notice, Khalil did not inform the defendants that he was not responsible for filling out the cover sheets. Further, he did not contact the defendants to discuss his alleged involvement in the theft during the period of his suspension. More importantly, the Museum’s extensive investigation included other findings that led the defendants to conclude that Khalil was involved with the theft. Most notably, according to the Zaremba Report, the missing tickets processed as validated transactions were noted only When Khalil was the on-duty supervisor and only when the four attendants were working. Khalil has presented insufficient evidence for a “fair-minded jury” to conclude that the defendants actually knew that Khalil was not involved with the theft or that they acted with reckless disregard of the truth. Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991).
Thus, Khalil has failed to show that the Museum abused and lost its privilege.
CONCLUSION
For the reasons stated above, the defendants’ motion for summary judgment is ALLOWED.