HOWARD W. MORGAN *vs.* THE REPUBLICAN PUBLISHING COMPANY.

Suffolk. March 13, 1924. — June 2, 1924.

Present: RUGG, C.J., BRALEY, DECOURCY, CROSBY, & CARROLL, JJ.

*Libel and Slander.*

Upon a demurrer to a declaration in an action by the proprietor of a detective agency for the publication of a libel in a newspaper, it appeared that the alleged libellous statements were in a story of an alleged conspiracy to "frame" the captain of the police department of the city in connection with a "probe" of that department, by getting possession of his automobile, loading it with contraband liquor, and having the captain charged with illegal transportation. The article recited that a certain person received money to purchase the liquor and then absconded with the money, and that upon his arrest he made a confession implicating as the active plotter one who was described in the article as a private detective of the plaintiff's detective agency, "the same firm that worked for" the district attorney "during the probe." The plaintiff alleged that the person named was never in his employ, and that by means of the publication he "has been greatly injured in his personal and business reputation, and his business greatly injured by the loss of patronage which he otherwise would have had, all to his great damage." The ground of the demurrer relied on was that it did not appear that the defamatory statements were made concerning the plaintiff nor that the use of the plaintiff's name in any way connected him with the alleged crime, but that it merely identified the person who was named as the active plotter against the captain of police. *Held,* that

   (1) The test as to whether the words used were defamatory of the

plaintiff was, whether reasonable men could interpret them as affecting the plaintiff;

(2) The defendant was liable for what was insinuated as well as for what was stated explicitly in the alleged libel;

(3) If the words published were fairly capable of two meanings, one harmless and the other defamatory, it was a question of fact to be determined at the trial on the merits, in what sense readers might have understood them;

(4) It could not be said that it would be unreasonable to infer from the entire printed article that the person therein referred to as a private detective of the plaintiff detective agency was acting as one of the plaintiff's employees and in the regular course of his employment at the time; such a defamatory statement might well tend to injure the plaintiff in a business for whose success a reputation for honorable conduct was essential, and, with the accompanying allegation of special damage, would be actionable;

(6) It was unnecessary to consider whether and under what circumstances it might be libellous to publish of another that his employee had committed a crime.

Tort by Howard W. Morgan, " doing business under the name and style of The Morgan Detective Agency," for libellous statements, described in the opinion, alleged to have been published by the defendant in the Springfield Daily Republican. Writ dated September 20, 1921.

The defendant demurred to the declaration. The demurrer was heard by *Sanderson,* J., who ordered it sustained. The plaintiff appealed.

*R. G. Wilson, Jr.,* for the plaintiff.

*M. Klein,* for the defendant.

DeCourcy, J. The case is here on appeal from an order sustaining a demurrer to the plaintiff's declaration, in an action of libel. The defendant published in its paper the story of an alleged conspiracy to " frame " Captain Quilty of the Springfield police department, in connection with a probe of that department, by getting possession of his automobile, loading it with contraband liquor, and having the captain charged with illegal transportation. The article recited that one Mokus received $400 to purchase the liquor, and then absconded with the money; and that upon his arrest he made a confession, implicating as the active plotter one Hannibal L. Hamlin. Hamlin was referred to as " private detective of the Morgan detective agency of Bos-

ton, the same firm that worked for District Attorney Charles H. Wright during the probe." The declaration alleged that Hamlin never was in the employ of the plaintiff, who carried on business as the Morgan Detective Agency; and that by means of the publication the plaintiff " has been greatly injured in his personal and business reputation, and his business greatly injured by the loss of patronage which he otherwise would have had, all to his great damage." While the demurrer assigned several causes, we understand that the only ground relied on, both in the Superior Court and in this court, is that it does not appear that the defamatory statements were made concerning the plaintiff: that the use of the word " Morgan " in no way connects him with the alleged crime, but merely identifies Hamlin.

As was said by Field, J. in *Twombly* v. *Monroe*, 136 Mass. 464, 469 : " it is only when the court can say that the publication is not reasonably capable of any defamatory meaning, and cannot reasonably be understood in any defamatory sense, that the court can rule, as matter of law, that the publication is not libellous, and withdraw the case from the jury, or order a verdict for the defendant." Taking the language used, in the light of the extrinsic facts alleged, the test is, how could reasonable men interpret the words printed in the defendant's paper, as affecting the plaintiff ? And in interpreting the language, it is to be borne in mind that " a defendant is liable for what is insinuated as well as for what is stated explicitly." *Merrill* v. *Post Publishing Co.* 197 Mass. 185, 193. Further, " If the words published are fairly capable of two meanings, one harmless and the other defamatory, it is a question for the jury in what sense readers may have understood them." *Twombly* v. *Monroe, supra,* page 468. The article in question not only involved Hamlin in a conspiracy to commit crime and defame the captain of the police force, but falsely identified him as a member of the plaintiff's detective agency, while engaged in a matter of detective business. Coupled with this was the statement, which was true and probably well known, that this same Morgan Detective Agency had been employed in the other probe of the police department, made by the

district attorney. We cannot say that it would be unreasonable to infer from the entire printed article that Hamlin was acting as one of the plaintiff's employees, and in the regular course of his employment, at the time. Such a defamatory statement might well tend to injure the plaintiff in a business for whose success a reputation for honorable conduct is essential; and would be actionable with the accompanying allegation of special damage, *Craig* v. *Proctor*, 229 Mass. 339, if not actionable *per se*. See *Robinson* v. *Coulter*, 215 Mass. 566; *Worthington* v. *Scribner*, 109 Mass. 487; *Bishop* v. *Journal Newspaper Co.* 168 Mass. 327.

In view of this possible interpretation of the language published by the defendant, that it charged misconduct by Hamlin in the regular performance of the plaintiff's business, and imported a personal reflection upon the plaintiff in the conduct of that business, to his special damage, it is unnecessary to consider whether or under what circumstances it may be libellous to publish of another that his employee has committed a crime. See *Brayton* v. *Cleveland Special Police Co.* 63 Ohio St. 83; *Trenton Mutual Life & Fire Ins. Co.* v. *Perrine*, 3 Zabr. 402, 413.

The appeal is properly before us under G. L. c. 231, § 96. *Samuel* v. *Page-Storms Drop Forge Co.* 243 Mass. 133. The entry must be

*Demurrer overruled.*