HERBERT F. ADAMS *vs.* JOHN B. CLAPP & others.

Plymouth.    May 7, 1963. — June 7, 1963.

Present: WILKINS, C.J., CUTTER, KIRK, & REARDON, JJ.

*Libel and Slander.*

In a letter which two assessors of a town signed and released for publication in local newspapers in answer to "sharp criticism" made of them by the third assessor, while campaigning for reëlection, for discharging the assessors' appraiser, statements to the effect that upon expiration of a two year period for which the appraiser had been employed his employment had not been continued because he had not shown the requisite ability, that the limitation of his employment to two years had been "a wise precaution" in the circumstances, and that the appraisal of a shipyard in the town was a job of such magnitude that a town employee could not be expected to spend the necessary time on it "even if qualified," were incapable of a defamatory meaning with respect to the appraiser and as a matter of law were not a libel of him.

TORT.    Writ in the Superior Court dated May 18, 1962.
Demurrers were heard by *Cahill, J.*
*Charles F. Marsland, Jr.,* for the plaintiff.
*James C. Heigham (Robert G. Clark, Jr.,* with him) for the defendants.

Adams *v.* Clapp.

KIRK, J.   The plaintiff appeals from orders sustaining
the defendants' demurrers to his declaration in four counts
in an action of tort for libel.   The averments in each count
are substantially the same.[1]   They differ in the names of
the defendants and, in the counts against the individual
defendants, in the allegation that publication of the alleged
libel was made in two weekly newspapers in Hingham as
well as in The Patriot Ledger.   Photostats of the alleged
libellous publications are annexed to the declaration and
are incorporated in the counts by reference.

One ground of demurrer raised by all of the defendants
is that the declaration does not state a cause of action.   We
address ourselves to that contention.   .

Each of the counts is almost four full printed pages in
length.   Approximately one page consists of excerpts from
a letter signed and released by the individual defendants
to the local papers and published on March 22, 1962.
These excerpts allegedly constitute the libel.   The re-
mainder of each count comprises a rather extensive ap-
praisal of the plaintiff's personal and professional reputa-
tion, an innuendo or argumentative analysis of the excerpts,
a reference to the fact that the individual defendants were
members of the three man board of assessors of the town
of Hingham who appointed the plaintiff to his position as
appraiser for the town on April 14, 1960, and a claim for
damages.   The article complained of as it appeared in
The Patriot Ledger according to the copy marked "A,"
and incorporated by reference in each count of the declara-
tion, is set out in full in the footnote.   An asterisk desig-
nates each of the paragraphs in the published letter which
were extracted and set out in the declaration.[2]

---

[1] Count 1 is against the George W. Prescott Publishing Company, publisher
of The Patriot Ledger; count 2 is against the defendant Clapp; count 3 is
against the defendant Prudden; count 4 is against both Clapp and Prudden.

[2]                          "Hingham Assessors Rap Whelan,
                                Give Views on 5 Issues

"Hingham — Two members of the Board of Assessors today answered re-
cent charges, made during campaign meetings, by the third member, David
Whelan, candidate for re-election to the board.   John B. Clapp, chairman,

Adams *v.* Clapp.

and Theodore M. Prudden, clerk, in a press release stated that they 'feel it is necessary to present to the townspeople the true facts concerning the operation of the assessor's office.'

## "Sharp Criticism

"Mr. Whelan in recent weeks has accused his fellow board members of disinterest in equalized and equitable assessments. He has sharply criticized the majority members for discharging Herbert Adams, the appraiser, at the close of his two-year term, and, in a letter last week, expressed opposition to the proposal to have a contract appraiser, rather than Mr. Adams, conduct an appraisal of the shipyard property.

"The statement from the majority of the board follows:

" '1 — The self-styled minority member recently cast a doubt upon the honor and intent of the majority. The record seems to speak for itself, not only in the hours of labor expended, but in the manner of dealing with the taxpayers. The office records indicate the following time devoted to the work in the last four years:

> Clapp — 415 days — 2 days per week
> Prudden — 223 days — 1 day per week
> Whelan — 106 days — ½ day per week.

It is noteworthy that the severest critic is the one who has put in the least time.'

## "Quotes General Laws

" '2 — Chapter 59, Section 38 of the General Laws of Massachusetts states "The assessors of each city and town shall at the time appointed therefor, make a fair cash valuation of all the estate, real and personal, subject to taxation therein — ." Criticism has been made of "proper procedures." The law does not specify the kind of "procedures" to be followed, but relies upon diligent and sincere efforts to perform the sworn duties. The amount of time spent by the critic would seem to be abundant testimony of his lack of knowledge and qualification to offer constructive criticism.'

* " '3 — Relative to the appraiser's term being two years, the following comments should suffice. Clapp and Prudden have never been against a longer term than two years. Were the chosen man to develop outstanding skills and qualifications, continued employment beyond two years would be warranted. In the facts at issue, the suggested limitation of two years seems to have been a wise precaution. Full knowledge of this two year condition of employment was given the present incumbent. It was also made clear that town government operates from year to year and that, in any year, the taxpayers could choose to eliminate the position.'

## "Judgment of Majority

* " 'The present appraiser's term has been terminated, effective April 13, 1962, since in the judgment of the majority, he has not displayed adequate developments, skills, nor progress toward the attainment of the professional stature which continued employment would require. This fact was discussed by all three members of the board in executive session, the appraiser having been asked to withdraw from the meeting. The minority member was advised that the two-year period was being invoked in order that the incumbent might end his employment without adverse effect on his future opportunities.'

* " 'Despite this knowledge, the critic chose not to give the appraiser a chance to resign but prematurely released to the press a damaging report. It has always been the intention of the majority to conduct the office without damage to the public interest or that of the employees. It is most unfortunate that political expediency should cause the sacrifice of an employee's future opportunities, but this, regrettably, is the case. The damage has been done and by the self-styled minority member.'

''The plaintiff seeks to bring himself within the well established principle that a demurrer to a declaration for libel cannot be sustained unless the words are not reasonably capable of any defamatory meaning.'' *Aldrich* v. *Boyle,* 328 Mass. 30, and cases cited. It is the application of this well established principle which presents the problem raised by demurrer in a given case. ''The test is whether, in the circumstances, the writing discredits the plaintiff in the minds of any considerable and respectable class of the community. A publication is defamatory when it tends to injure one's reputation in the community and to expose him to hatred, ridicule, and contempt, an imputation of crime or of bad character or an injury in one's office or business not being essential.'' *Muchnick* v. *Post Publishing Co.* 332 Mass. 304, 305–306, and cases cited.

We note the circumstance that the release of the letter by the individual defendants took place during a local political campaign in response to criticism publicly made of them by the third member of the board of assessors on several issues including the termination of the plaintiff's services as appraiser for the town. See *Aldrich* v. *Boyle,* 328 Mass. 30, 32; *Poland* v. *Post Publishing Co.* 330 Mass. 701, 704. The obvious purpose of the letter was to answer the published criticism by Whelan, the third member. It appears from the declaration as a whole that incidental to this purpose reference was made to the plaintiff's manner of performance as town appraiser during his two year term, and in connection therewith, to the magnitude of the studies involved in the pending appraisal of the shipyard located in the town. Both were matters of legitimate public interest. The individual defendants, as public officeholders, when

---

'' '4 — Relative to the keying of the maps, it should be made clear that this method of map maintenance has been under discussion and consideration with the Advisory Committee for several years. As previously announced, we are proceeding this year with such a program.'

* '' '5 — Those who are at all familiar with the magnitude of the shipyard complex could hardly hope to have a town employee, even if qualified, spend the necessary five months which professional engineers have estimated would be the required time to appraise the shipyard. The minority member's observation on this point should clearly indicate his lack of comprehension of this and many other problems with which we are confronted.' ''

publicly challenged, were entitled to express their views on these matters which were within their special knowledge and responsibility. Although the plaintiff, unlike the individual defendants and Whelan, was neither a candidate for nor a holder of elective office, he was a public employee whose reappointment to his position had been made a matter of public concern and rested upon the judgment of the individual defendants.

The demurrers were properly sustained. The circumstance that the statement was made during the course of a political campaign or in a controversy relating to town affairs, and the added circumstance that the plaintiff was an appointed town employee, while not necessarily decisive, are not to be overlooked on demurrer. See *Sillars* v. *Collier,* 151 Mass. 50, 53.

We rest our opinion on the ground that read in context the words used, "taken in their natural sense, and without a forced or strained construction" are not defamatory. *Peck* v. *Wakefield Item Co.* 280 Mass. 451, 453. *Aldrich* v. *Boyle,* 328 Mass. 30, 32. We think that the case falls well within the ambit of our holding in *Ricci* v. *Crowley,* 333 Mass. 26, 27, that the words "for the good of the service" as grounds for the removal of an appointive officer are not defamatory.

The words here used amount to no more than a mild bill of particulars embraced within the general phrase "for the good of the service." They constitute at most a statement that the plaintiff in the performance of his duties as a public employee had not measured up to the expectations of the defendants who appointed him, and that his appointment would not be renewed. The concluding words of *Ricci* v. *Crowley,* at 27–28, are apposite here. The individual defendants "may have well determined for many reasons, none of which reflected upon the character or probity of the plaintiff, that another, perhaps more qualified, could do a better job for the . . . [town]. Nothing defamatory may be inferred from the use of such words." That the individual defendants expressed regret in the release of

the letter does not, in our judgment in the circumstances here presented, convert a nondefamatory statement into a defamatory statement.

There was no error in sustaining the demurrers. In our opinion it is an appropriate case for order for judgment under G. L. c. 231, § 125. *Rawson* v. *Arlington Advocate, Inc.* 336 Mass. 31, 34.

> *Orders sustaining demurrers affirmed.*
> *Judgment for the defendants.*