ARIZONA BIOCHEMICAL COMPANY,
Plaintiff,

v.

The **HEARST CORPORATION,**
Defendant.

ARIZONA BIOCHEMICAL COMPANY,
Plaintiff,

v.

**METROMEDIA, INC.,** Defendant.

Nos. 68 Civ. 4549, 68 Civ. 4522.

United States District Court
S. D. New York.

July 23, 1969.

Sacks & Rubin, New York City, for plaintiff.

Coudert Bros., New York City, by Carleton G. Eldridge, Jr., New York City, of counsel, for defendants.

## OPINION

EDELSTEIN, District Judge.

The defendants in these separate actions for libel have both moved under Rule 12(b) (6) F.R.Civ.P. to dismiss the complaints filed against them on the grounds that the plaintiff has failed to allege sufficiently both actual malice and damages as required by New York Times Co. v. Sullivan, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964). As a predicate to this argument, defendants maintain that *New York Times* governs this case.

The plaintiff, Arizona Biochemical Company, is in the business of collecting and disposing of garbage, and, at the time of the publication of the alleged libels, held contracts for garbage disposal awarded by several municipalities in the area of Albany, New York. The Hearst Corporation (hereinafter Hearst) is the owner and publisher of an Albany newspaper named THE TIMES UNION. Plaintiff alleges in its complaint against Hearst that the latter published in THE TIMES UNION several libelous articles concerning plaintiff in which articles plaintiff was charged with having associations with the "Mafia," with paying kickbacks to obtain local garbage disposal contracts, with gaining control over the garbage collection and disposal business in the area by employing threats and physical force and violence against its competitors, with employing tactics of deceit and bad faith in acquiring a local company, with having "a long history of financial difficulties traceable in eleven states," and with acting secretly in concert with public officials of Troy to obtain a contract from that city without revealing this to the public. Metromedia, Inc., (hereinafter Metromedia) is the operator of the New York television station designated WNEW, Channel 5. In its complaint against Metromedia plaintiff alleges that this defendant, during one of its news broadcasts, repeated most of the charges against plaintiff made previously by Hearst and added, among other new charges, that plaintiff was the subject of investigation by various public agencies.

New York Times Co. v. Sullivan, *supra*, was an action brought by an elected official of the City of Montgomery, Alabama, for a libelous advertisement which allegedly reflected upon his official conduct as supervisor of the local police department. The advertisement in question involved the civil rights movement then being led in the South by Martin Luther King. The primary holding of the case was that the guaranties of the First Amendment regarding freedom of speech required a rule that a public official cannot recover damages "for a defamatory falsehood relating to his official conduct unless he proves that the statement was made with 'actual malice' —that is, with knowledge that it was false or with reckless disregard of whether it was false or not."

In succeeding cases the Supreme Court has expanded the scope of this rule's protection by including within its ambit actions by public figures suing for libel, Curtis Publishing Co. v. Butts, 388 U.S. 130, 87 S.Ct. 1975, 18 L.Ed.2d

1094 (1967), and actions for invasion of privacy based on false statements where matters of public concern were at issue, Time, Inc. v. Hill, 385 U.S. 374, 87 S.Ct. 534, 17 L.Ed.2d 456 (1967). In the cases at bar the defendants contend that the *New York Times* rule governs here because plaintiff's business is a subject of substantial public interest and because plaintiff, under the germane Supreme Court decisions, is a public figure. The plaintiff responds by arguing that it is not a public figure and that an allegation of public interest is not, *per se,* sufficient reason to warrant the application of the *New York Times* rule to a libel action. The threshold question, therefore, is whether this case is governed by the *New York Times* ruling. This court holds that it is.

The ambit of the Supreme Court's ruling was not finally delineated by the New York Times opinion itself.[1] The Court, rather, has proceeded on a case by case basis in determining to what new categories of cases—other than those involving civil actions for defamation brought by public officials—its ruling is to apply. For example, in Garrison v. Louisiana, 379 U.S. 64, 85 S.Ct. 209, 13 L.Ed.2d 125 (1964), the *New York Times* holding was applied to an action brought for criminal libel. Next in Rosenblatt v. Baer, 383 U.S. 75, 86 S. Ct. 669, 15 L.Ed.2d 597 (1966), the Court included within its term "public official" a former supervisor of a county recreation area. Then in Curtis Publishing Co. v. Butts, and Associated Press v. Walker, 388 U.S. 130, 87 S.Ct. 1975, 18 L.Ed.2d 1094 (1967), the Court held that its constitutional standard was applicable to statements made about public figures as well as to expressions concerning public officials.[2]

In any particular context "the scope of the [New York Times] privilege is to be determined by reference to the func-tions it serves." Rosenblatt v. Baer, *supra,* 383 U.S. at 85, n. 10, 86 S.Ct., at 675. The Supreme Court has made it clear in all of the opinions just noted, and in others, that the rationale underlying these decisions is the vital need to protect the guaranties of free expression found in the First Amendment. The pith of the matter is the concept that in our constitutional system of self-government, the people have reserved to themselves the power to oversee the functioning of their society. Therefore, "[f]reedom of discussion, if it would fulfill its historic function in this nation, must embrace all issues about which information is needed or appropriate to enable the members of society to cope with the exigencies of their period." Thornhill v. Alabama, 310 U.S. 88, 102, 60 S.Ct. 736, 744, 84 L.Ed. 1093 (1940). This is what the Supreme Court alluded to in *New York Times* when it adverted to our "* * * profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open * * *." 376 U.S. at 270, 84 S.Ct., at 721.

■ Viewed in this light, the privilege accorded by New York Times is designed "* * * to insure the ascertainment and publication of the truth about public affairs." St. Amant v. Thompson, 390 U.S. 727, 732, 88 S.Ct. 1323, 1326, 20 L.Ed.2d 262 (1968). If this be so the privilege should be defined in broader terms than public official or public figure.

In modern democratic society the public judgment makes itself felt on a great variety of subjects in a great variety of ways, official and unofficial. If decision on these matters is to be adequately informed every effort ought to be made to free the channels of communication with respect to these subjects. It is therefore the function of the first amendment to

---

1. The Court explicitly admitted this in footnote 23 of the opinion, 376 U.S. at 283, 84 S.Ct. 710.

2. The public figure in *Butts* was a famous college football coach and the public figure in *Walker* was a retired general who had taken vocal positions concerning civil rights.

protect the freedom of speech and press on all those matters as to which there is some element of public participation. At least on those issues where the public judgment can make itself felt through official or unofficial communication it can be said that the matter is one of proper public concern. The determination of "matters of public concern" should thus become the key to the application of the privilege recognized in the *Times* decision. Pedrick, Freedom of the Press and the Law of Libel: The Modern Revised Translation, 49 Cornell L.Q. 581, 592 (1964). *Accord,* Comment, The Limits of Political Speech: New York Times v. Sullivan Revisited, 14 U.C.L. A.L.Rev. 631 (1967). *See* Brennan, The Supreme Court and the Meiklejohn Interpretation of the First Amendment, 79 Harv.L.Rev. 1 (1965). *Cf*. Time, Inc. v. Hill, *supra*.

The conclusion reached here—that matters of public concern should become the key to the application of the *New York Times* rule—has support in case law. In United Medical Laboratories, Inc. v. Columbia Broadcasting System, Inc., 404 F.2d 706 (9th Cir.1968), the plaintiff, a mail order clinical testing laboratory, complained of a series of national television broadcasts, radio broadcasts and press releases published by defendant which reported on the inaccuracies in the results often given by some of these laboratories and commented on the significance of the errors as a health hazard. The plaintiff, although not specifically named in any of the defendant's publications, being one of the largest mail order laboratories in the country, claimed that it was defamed by the intended implications of the reports as they related to mail order laboratories in general. On appeal from the grant of summary judgment in favor of the defendant by the court below, the Court of Appeals held, *inter alia,* that the *New York Times* rule governed this action because the publications involved, directed as they were to professional practices and conditions in the field of health, concerned a matter of "inherent public concern." The *United Medical Laboratories* case was expressly followed in Bon Air Hotel, Inc. v. Times, Inc., 295 F.Supp. 704 (S.D.Ga.1969), in which the *New York Times* rule was applied to a case concerning a magazine article critical of a hotel that catered to followers of the annual golf event, the Masters Tournament. Also, in All Diet Foods Distributors, Inc. v. Time, Inc., 56 Misc.2d 821, 290 N.Y.S.2d 445 (Sup.Ct. 1967), the rule was applied to a case concerning a magazine article relating to alleged frauds perpetrated in the marketing of foods favored by faddists. *Accord,* Altoona Clay Products, Inc. v. Dun & Bradstreet, Inc., 286 F.Supp. 899, 913 (W.D.Pa.1968) (credit report). *Cf.* Pauling v. News Syndicate Company, 335 F.2d 659, 671 (2d Cir.1964) (editorial relating to a pacifist).

Although not a libel case, note should be taken of Pickering v. Board of Education, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968). There the appellant, a public school teacher, had been fired for writing a letter to the local newspaper critical of the Board of Education's handling of past proposals to raise new revenue for the schools. The appellant sought review of his dismissal. The Court held in his favor. The dismissal had been justified partly on the ground that the appellant's letter contained false statements. As to this reason for dismissal, the Court held that because the statements related to a matter of public concern, the operation of the Board of Education, the misstatements of fact could not justify the dismissal unless those misstatements were made with actual malice.

In the cases at bar, the plaintiff, it will be recalled, collected and disposed of the garbage of several municipalities. By averment in its own complaints, plaintiff thereby performed "essential services for the welfare and health of the inhabitants of said municipalities." Despite this plaintiff argues that it is merely an ordinary business organization engaged in an unromantic business.

The plaintiff, however, is more than that. For all practical purposes Arizona Biochemical Company is the sanitation department of the several cities and towns which it serves. The operation of plaintiff's business is infected with the public interest. It is quasi-governmental in nature and is a matter of substantial public concern. The public has a legitimate interest in discovering whether an agency that performs one of its essential services is connected with elements of organized crime, whether that agency obtains valuable contracts by bribing public officials, whether that agency is financially competent to perform its functions, etc. News reports that relate to matters such as these play an important role by informing the public about matters which are of substantial importance to it. Certainly it is expression of this type that the *New York Times* rule is designed to protect.

■ One final point needs to be made on the applicability of the *New York Times* rule to these cases. Metromedia did not broadcast its own report relating to the plaintiff until approximately one month after Hearst first published its report. Plaintiff does not contest the fact that by that time it had in fact become a public figure due to Hearst's report. Plaintiff argues, however, that the defendants cannot take advantage of this because this public figure status resulted from Hearst's report. While this argument may be relevant against Hearst, as far as Metromedia is concerned plaintiff was a public figure at the time of Metromedia's broadcast. For this reason too, the *New York Times* rule applies to the Metromedia action.[3]

■ Having found that the *New York Times* rule governs these cases, these suits cannot succeed unless the plaintiff pleads and proves by clear and convincing evidence actual malice. The

questions now before the court are two: has the plaintiff pleaded actual malice sufficiently, and has the plaintiff pleaded damages sufficiently?

The complaints filed against Hearst and Metromedia differ with regard to their allegations of actual malice. Paragraph 16 of the Hearst complaint reads as follows:

At the time of said publications defendant intentionally refrained from ascertaining that the aforesaid matters contained in said articles were false. Upon information and belief, the defendant * * * intentionally so refrained and malevolently published such false and defamatory matter to influence and achieve the impending election of public officials. Said defendant * * * [was] actuated by actual malice and wantonly and wrongfully intended by such publication to injure plaintiff.

Paragraph 12 of the Metromedia complaint contains the allegation that the defendant acted "maliciously and falsely, and in violation of its obligation to disseminate truthful facts and news" and made its charges against plaintiff "without substance or foundation." Also, in Paragraph 13 plaintiff alleged that defendant's statements were "intended maliciously to and did injure plaintiff in his good name."

Defendants contend that these allegations are merely conclusory and are fatally deficient because they fail to allege any facts which, if proven, would support a finding of actual malice as defined by *New York Times*. This objection, however, is without substance.

■■ Under *New York Times* actual malice is a vital element of a libel action and it must be alleged if the complaint is to state a claim upon which relief can be granted. Whether a defendant acted with actual malice, though, is a question of fact. *See* St. Amant v. Thompson,

---

3. Defendants have also argued that plaintiff is a public figure simply because of the nature of the work performed by it. In view of the court's decision as to

the proper definition of the scope of the *New York Times* rule, the court finds it unnecessary to consider this contention.

supra; Pape v. Time, Inc., 354 F.2d 558 (7th Cir.1965), cert. denied 384 U.S. 909, 86 S.Ct. 1339, 16 L.Ed.2d 361 (1966); Goldwater v. Ginzburg, 261 F. Supp. 784 (S.D.N.Y.1966), aff'd 414 F. 2d 324 (2d Cir.1969). Generally the rule in federal courts is that pleadings are to contain short and concise statements; complaints are not required to contain mere evidentiary statements. Indeed, Rule 9(b) F.R.Civ.P. explicitly provides that "malice, intent, knowledge, and other condition of mind may be averred generally." No compelling reason has been shown which could persuade this court that these usual and beneficial rules of practice should be altered so as to require the pleading of evidentiary matters in cases such as these.

■ Defendants argue that the threat of an expensive and prolonged litigation can deter an otherwise crusading publisher, and it is precisely this form of chilling effect which the New York Times rulings sought to avoid. For this reason, defendants argue, policy demands that if a plaintiff cannot plead facts which will support a claim of actual malice, he cannot maintain a suit even though the necessary facts may well be ascertainable only through discovery. Summary judgment, a procedure much better suited to a consideration of evidentiary matter than is a motion to dismiss, is still available, however, to those defendants who fall victim to groundless litigation. Defendants also rely on the rejection by the Supreme Court of the complaint filed in Linn v. United Plant Guard Workers of America, Local 114, 383 U.S. 53, 86 S.Ct. 657, 15 L.Ed.2d 582 (1966); but all that the Court said there was that the allegations of the complaint were insufficient. There is nothing in that opinion which requires that a special pleading rule is to be applied to cases governed by New York Times. In any event it is clear that actual malice was not pleaded in the Linn complaint. This court is of the opinion that plaintiff is not required to include in its complaints the facts upon which proof of actual malice can be based; it need only plead actual malice itself. Walker v. Kansas City Star Company, 406 S.W.2d 44 (Mo.1966); Walker v. Associated Press, 160 Colo. 361, 417 P.2d 486 (1966); Cabin v. Community Newspapers, Inc., 50 Misc.2d 574, 270 N. Y.S.2d 913 (Sup.Ct.), aff'd. 27 A.D.2d 543, 275 N.Y.S.2d 396 (2d Dept.1966). Contra John Birch Society v. National Broadcasting Co., 65 Civ. 3662 (S.D.N. Y.1966), aff'd on other grounds 377 F. 2d 194 (2d Cir.1967).

Hearst contends that despite the language of Paragraph 16 of the complaint filed against it, plaintiff has not satisfied the New York Times requirements because the Hearst newspaper stories included in the complaint document the investigation of the facts conducted by Hearst. This documentation, Hearst argues, eliminates any doubt that Hearst was neither aware of, nor proceeded in reckless disregard of the falsity of its charges. Hearst's state of mind, however, is precisely the point that will have to be determined subsequently, St. Amant v. Thompson, supra at 732, 88 S.Ct. 1323. Plaintiff has alleged in sufficient terms the actual malice required by New York Times; it is not for this court on a motion to dismiss to determine whether in fact Hearst was motivated by actual malice.

■ Metromedia also argues that the allegations made against it do not conform to the New York Times definition of actual malice. Here the court agrees. The clear meaning of the language used in paragraphs 12 and 13 of the Metromedia complaint is simply that Metromedia acted with ill will towards plaintiff and that the report published about plaintiff contained false statements. Plaintiff attempts to bring its allegations within the reckless disregard portion of the New York Times definition of actual malice by arguing that its allegation that Metromedia's reports were without foundation must be read in light of the fact that Metromedia conducted its own investigation of the charges first made by Hearst. If so understood, plaintiff argues, given the

number and the seriousness of the accusations hurled at it, the complaint means that "Metromedia's investigation was so 'slipshod and sketchy' * * * as to constitute the reckless conduct requirement by the *Times* case." This misses the point. In order to satisfy the *New York Times* standard plaintiff must charge a doubting state of mind on the part of the defendant.

These cases are clear that reckless conduct is not measured by whether a reasonably prudent man would have published, or would have investigated before publishing. There must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication. Publishing with such doubts shows reckless disregard for truth or falsity and demonstrates actual malice. St. Amant v. Thompson, *supra* at 731, 88 S.Ct., at 1325.

This leaves only the final issue, namely, whether plaintiff has pleaded damages sufficiently. The complaints are almost identical in this respect.

At the time of said malicious utterances, plaintiff was and is conducting its business throughout the United States and said false utterances have seriously injured and prejudiced plaintiff in the financial markets, in its relationships with its customers and municipalities, and in its business endeavors to obtain valuable contracts in the tens of millions of dollars with others.

Thereby plaintiff has been damaged in the sum of $45,000,000.

Concededly, plaintiff has not pleaded special damages.

It is clear that the complaints in both actions allege libel *per se,* and the general common law rule of libel is that where libel *per se* is alleged, a presumption of harm to the plaintiff's reputation arises and there is thus no need, in such a case, for the plaintiff to either plead or prove special damages. The defendants contend, however, that the pleading of special damages is constitutionally required in an action governed by *New York Times*. This issue has just been considered by the Court of Appeals for this Circuit and the Court has held that nothing in *New York Times* or related cases alters state law in this regard. Goldwater v. Ginzburg, 414 F.2d 324 (2d Cir.1969). The pleading of special damages is not required in this case.

The motion of defendant Hearst is denied. The motion of defendant Metromedia is granted, except that plaintiff is granted leave to replead within twenty days.

So ordered.