JAMES J. TWOHIG *vs.* BOSTON HERALD-TRAVELER CORPORATION.

Suffolk. November 10, 1972. — January 12, 1973.

Present: TAURO, C.J., REARDON, HENNESSEY, KAPLAN, & WILKINS, JJ.

*Libel and Slander.*

In an action for libel by a candidate for public office against a newspaper based on publication of an alleged defamatory article during a political campaign stressing an anti-labor characterization of the plaintiff by his political opponent, where it was established at the trial that the plaintiff while in the Legislature had twice voted against a proposed cash sickness bill favored by organized labor, and there was evidence that when the plaintiff telephoned the reporter who had written the article to complain about the accuracy of the "anti-labor" characterization and to insist that the plaintiff's vote was pro-labor the reporter disagreed and the conversation terminated, it was held by this court on all the evidence that a finding of the actual malice required for a determination of liability on the part of the defendant under "the constitutional standard" was not warranted, even though the reporter may have negligently failed to check the validity of the plaintiff's political opponent's anti-labor characterization, and that it was error to deny the defendant's motion for a directed verdict. [809–811]

TORT. Writ in the Superior Court dated September 13, 1962.

The action was tried before *Goldberg,* J.

The case was submitted on briefs.

*Henry L. McNulty & Walter J. Hurley* for the defendant.
*James J. Twohig,* pro se.

TAURO, C.J. This is an action of tort for libel stemming from the publication of an article by the defendant in its newspaper, The Boston Herald. On September 23, 1971, the jury returned a verdict of $10,000 for the plaintiff. The case is before us on the defendant's exception

to a refusal of the trial judge to direct a verdict for the defendant.

We summarize the pertinent evidence. On September 13, 1962, the defendant published an article written by one of its reporters containing a commentary on the various candidates, including the plaintiff, who were running for political office in the September primary. The reference to the plaintiff, which he alleged was defamatory, read as follows: "The Senate president has reversed the anti-union charge Twohig [the plaintiff] is spreading about him by resurrecting some of Twohig's votes against Labor when he served on Beacon Hill." [1] It was established at trial that Twohig had twice voted against a cash sickness bill whose passage the lobby for organized labor had favored. The plaintiff called the reporter who had written the story on the date of its publication to complain about the accuracy of the "anti-labor" characterization of his vote against the bill. Twohig insisted that his votes against that bill were pro-labor but the reporter disagreed (allegedly with some profanity) and the conversation was terminated.

Neither party disputes the fact that since the alleged defamatory statement concerned a matter of public interest, its publication " '. . . falls within the class of privileged communications for which no action can be maintained without proof of actual malice.' *Gott* v. *Pulsifer*, 122 Mass. 235, 238–239." *Tripoli* v. *Boston Herald-Traveler Corp.* 359 Mass. 150, 153–154. Originally, the actual malice standard, which requires clear and convincing proof that the alleged libeler acted "with knowledge that . . . [the publication] was false or with reckless disregard of whether it was false or not" (*New York Times Co.* v. *Sullivan,* 376 U. S. 254, 280), had applied to those cases where a public official sought to recover damages for a defamatory statement relating to his official conduct. However, cases subsequent to the

---

[1] Whether in fact these words are defamatory has not been argued on appeal. See *Twohig* v. *Boston Herald-Traveler Corp.* 346 Mass. 654.

*New York Times* decision made it clear that the range of privileged communications protected by the First and Fourteenth Amendments extended to publications about participants in events of public interest, regardless of whether the participant was a "public official" or "public figure." See e.g., *Time, Inc.* v. *McLaney,* 406 F. 2d 565 (5th Cir.), cert. den. sub nom. *McLaney* v. *Time, Inc.* 395 U. S. 922 (gambler involved in political campaign in another country); the *Tripoli* case, *supra* (janitor suspected of involvement in the "Great Plymouth Mail Robbery"). The United States Supreme Court expressly rejected the "public figure" doctrine in *Rosenbloom* v. *Metromedia, Inc.* 403 U. S. 29, where it applied the *New York Times* standard of actual malice to a State civil libel action brought by a private citizen against a radio station which had reported his arrest for his involvement in the "smut literature racket." The court held that "[T]he determinant whether the First Amendment applies to state libel actions is whether the utterance involved concerns an issue of public or general concern . . . ." *Rosenbloom* v. *Metromedia, Inc., supra,* at 44. See *Priestley* v. *Hastings & Sons Publishing Co. of Lynn,* 360 Mass. 118.

Thus, the central issue presented by the defendant's bill of exceptions is whether there was sufficient evidence of the defendant's actual malice to present a jury question. We must make a determination [2] whether there was any evidence that the defendant acted with knowledge that the publication was false or with reckless disregard of whether it was false or not which warranted the trial court's denial of the defendant's motion for a directed verdict. "In these cases a court's 'duty is not limited to the elaboration of constitutional principles; we must also in proper cases review the evidence to make certain that

---

[2] "Clearly, then, this Court has an 'obligation to test challenged judgments against the guarantees of the First and Fourteenth Amendments,' and in doing so 'this court cannot avoid making an independent constitutional judgment on the facts of the case.' *Jacobellis* v. *Ohio,* 378 U. S. 184, 190 (1964). The simple fact is that First Amendment questions of 'constitutional fact' compel this court's *de novo* review." *Rosenbloom* v. *Metromedia, Inc., supra,* at 54.

those principles have been constitutionally applied.' *New York Times Co.* v. *Sullivan,* 376 U. S., at 285." *Rosenbloom* v. *Metromedia, Inc., supra,* at 55.

The plaintiff argues that the evidence of his telephone conversation on the day of the publication with the defendant's reporter was sufficient to present a jury question on the issue of actual malice. The plaintiff argues that the reporter's lack of knowledge of the record other than from the opponent's circulars, as well as the reporter's refusal to investigate the matter in any way after the plaintiff had called to complain about the publication and the reporter's abusive attitude and profane language occurring in the telephone conversation, were sufficient to present the question whether the defendant demonstrated reckless disregard of the truth.

However, in reviewing de novo a similar factual pattern in *Rosenbloom* v. *Metromedia, Inc., supra,* the United States Supreme Court noted that a telephone call made by the plaintiff to the defendant after a series of broadcasts and before some others "had no probative value" as to publications made before the call. In the instant case, the evidence arising from the plaintiff's telephone conversation with the reporter subsequent to the publication, even if viewed in the light most favorable to the plaintiff, shows at most that the reporter may have negligently failed to check the validity of the plaintiff's political opponent's anti-labor label. However, the "cases are clear that reckless conduct is not measured by whether a reasonably prudent man would have published, or would have investigated before publishing. There must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication." *St. Amant* v. *Thompson,* 390 U. S. 727, 731. There is no evidence in this record to support the conclusion that the reporter ever entertained serious doubts as to the truth of the report. To the contrary, all the evidence indicates that the reporter was convinced that the anti-labor characterization of the plaintiff's votes against the cash sickness bill was an accurate one since an

organized labor lobby had fought for the bill's enactment.

Thus, our independent analysis of the record leads us to conclude that the plaintiff's evidence did not satisfy "the constitutional standard with the convincing clarity necessary to raise a jury question" (*Rosenbloom* v. *Metromedia, Inc., supra,* at 55) as to whether the alleged defamatory statement was published with knowledge that it was false or with reckless disregard of whether it was false.

Since there was no evidence of actual malice on the defendant's part in publishing the alleged defamatory statement, it was error to deny the defendant's motion for a directed verdict.

> *Exceptions sustained.*
> *Judgment for the defendant.*