STANLEY P. ROKETENETZ, JR. & others *vs.* WOBURN
DAILY TIMES, INC.

Middlesex.    November 21, 1972. — March 14, 1973.

Present: HALE, C.J., ROSE, KEVILLE, GOODMAN, GRANT & ARMSTRONG, JJ.

*Libel and Slander. Constitutional Law,* Freedom of speech and press,
    Libel. *Malice. Pleading, Civil,* Declaration. *Words,* "Malicious,"
    "Express Malice."

In an action for libel against a newspaper, a declaration alleging that the
    plaintiff operated a waste disposal business in a certain city, that the
    defendant published in its paper "a false and malicious libel . . . with
    express malice toward the said plaintiff," and setting forth the
    allegedly false and defamatory statements made about the plaintiff
    at a public meeting of the board of health on a matter of public
    concern in which he was involved, was demurrable as failing to state a
    cause of action in that the declaration did not allege substantive facts
    demonstrating that the publication was made "with knowledge that
    it was false or with reckless disregard of whether it was false or not" so
    as to escape the qualified constitutional privilege established by *New
    York Times Co.* v. *Sullivan,* 376 U. S. 254, as extended by *Rosen-
    bloom* v. *Metromedia, Inc.* 403 U. S. 29. [158-163] ARMSTRONG, J.,
    dissenting.

TORT. Writ in the Superior Court dated February 15,
1972.

The action was heard by *Tomasello,* J., on demurrers.

*Norman Kerman,* for the plaintiffs, submitted a brief.

GOODMAN, J.    These are appeals from orders sustaining
demurrers to four counts in tort for libel. Each count names
as plaintiff a different member of the Roketenetz family
which operates a waste disposal business in Woburn. Each
of the four counts (hereafter referred to collectively as the
declaration[1]) alleges that the defendant in its newspaper

---

[1] Apart from the names of the plaintiffs, the counts are substantially the same.

"did publish in said paper a false and malicious libel . . . with express malice toward the said plaintiff."

The publication attached to the declaration is an account of a meeting of the board of health of the city of Woburn at which two aldermen "asked for the cooperation of the new Board members to either convince the Woburn Redevelopment Authority to reassign another location to the Rokenctz [sic] businesses or to effectively police the Roketenetz property so that citizens in the area would not be bothered by foul smelling garbage left in trucks overnight."

The meeting was held "in anticipation of tonight's public hearing on the application for a permit to store gas, oil and diesel fuel at the new Roketenetz's business location."

The account reported that members of the board "stated that they would do everything in their power to see that the Roketenetz business obeyed the law and washed out their garbage hauling trucks each day." The chairman "pointed out, however, that in the past it had been very difficult to deal with the Roketenetz family." These difficulties as described by the chairman are set out in the footnote.[2]

The article then quotes verbatim the discussion at the meeting between Alderman O'Rourke and the superintendent of solid wastes as to the feasibility of preventing spillage and odor problems in the collection of garbage. Alderman Hassett asked "if there was any way to prevent a truck full of garbage being parked there overnight" and was told by the board of health secretary that it was illegal.

The account ends with a request to the board by Alderman O'Rourke "that he be immediately informed if there were any complaints about the operations at the new

---

[2] "The Board of Health Chairman cited instances when shotguns had been pointed at inspectors and Board of Health members attempting to do their duty by checking out complaints about the Roketenetz operations at their old location.

"The situation at the old location was unenforceable." stated Hardcastle who claimed that a State Health Officer who had faced the shotgun informed him not to bother because, '[t]he job isn't worth your life.'

"The Board of Health Chairman also stated that [on] one occasion Edward App, the Health Inspector had been physically beaten while attempting to inspect the Roketenetz property on Old New Boston Street."

site and stated that he personally would inspect each complaint."

The defendant demurred on the ground, among others, that the declaration did not state a cause of action. We agree; the demurrers were properly sustained.

The plaintiffs rely on the proposition in *Ingalls* v. *Hastings & Sons Publishing Co.* 304 Mass. 31, 34, that "a demurrer to a declaration in libel cannot be sustained . . . unless the words . . . are incapable of a defamatory meaning" and its corollary that given defamatory words, privilege is "matter of defence not open on demurrer". *Muchnick* v. *Post Publishing Co.* 332 Mass. 304, dealing with the privilege of fair comment. But see the qualification in *Poland* v. *Post Publishing Co.* 330 Mass. 701, 704 and *Boston Nutrition Society, Inc.* v. *Stare,* 342 Mass. 439, 443 ("ordinarily not open on demurrer"). This order of pleading based on the common law allocation of the burden of proof (see Restatement: Torts, § 613) derives from the view of defamation as an intentional tort like trespass. Harper & James, Torts, § 5.21. "A person publishes libellous matter at his peril." *Burt* v. *Advertiser Newspaper Co.* 154 Mass. 238, 245 (Holmes, J.). "[T]he liability [is] the usual liability in tort for the natural consequence of a manifestly injurious act." *Hanson* v. *Globe Newspaper Co.* 159 Mass. 293, 303, (Holmes, J., dissenting opinion). (See *Sweet* v. *Post Publishing Co.* 215 Mass. 450). This historical development of libel bears out this analysis. Holdsworth, 8 History of English Law, 365-367, 375, et seq. Plucknett, A Concise History of the Common Law (4th ed.) 466, et seq.

However, the analysis is not qualified by the constitutional limitation imposed by *New York Times Co.* v. *Sullivan,* 376 U. S. 254, and — particularly applicable in this case — *Rosenbloom* v. *Metromedia, Inc.* 403 U. S. 29 and *Priestley* v. *Hastings & Sons Publishing Co. of Lynn,* 360 Mass. 118. See *Twohig* v. *Boston Herald-Traveler Corp.* 362 Mass. 807.

The publication in this case is strikingly similar to the newspaper reports in *Priestley* v. *Hastings & Sons Publish-*

*ing Co. of Lynn* of meetings of the selectmen in Saugus at which the town manager made defamatory charges, which a jury could have found to be false, against an architect commissioned to build a new junior high school. The Supreme Judicial Court in the *Priestley* case, *supra,* at 123, following *Rosenbloom* v. *Metromedia, Inc.* and *Greenbelt Cooperative Publishing Association* v. *Bresler,* 398 U. S. 6, held that the publication "related to the plaintiff's involvement in an event of public or general concern" and applied the *Times* standard. Under that standard it is a matter of proof by the plaintiff (376 U. S. at 284) that the publication was made "with knowledge that it was false or with reckless disregard of whether it was false or not" (376 U. S. at 279-280), "that the lie was a knowing one, or uttered in reckless disregard of the truth." *Rosenblatt* v. *Baer,* 383 U. S. 75, 92.

The *Times* case, as extended by *Rosenbloom* v. *Metromedia, Inc.* 403 U. S. 29, thus established a qualified constitutional privilege to publish false and defamatory material about matters of public concern. It adopted the view of the Kansas Court in *Coleman* v. *MacLennan,* 78 Kan. 711, 723, that "the occasion gives rise to a privilege, qualified to this extent: any one claiming to be defamed by the communication must show actual malice or go remediless. This privilege extends to a great variety of subjects, and includes matters of public concern, public men, and candidates for office." See Kalven, The New York Times Case: A Note on "the Central Meaning of the First Amendment," 1964 Sup. Ct. Rev. 191, 203; Pedrick, Freedom of the Press and the Law of Libel: The Modern Revised Translation, 49 Cornell L. Q. 581, 587.

The publication in this case clearly comes within the constitutional privilege. It reports a meeting of the board of health concerning garbage disposal and the grant of a permit to store gasoline, etc. at a new location about which a public hearing was scheduled. These were obviously matters of public concern. See *Arizona Biochemical Co.* v. *Hearst Corp.* 302 F. Supp. 412 (S. D. N. Y.). The publication cannot, therefore, be the basis for a cause of action

unless the declaration contains an allegation adequate to comply with the *Times* standard. The introduction at trial of this article and the fact of its publication, without more, would result in a directed verdict for the defendant at the close of the plaintiffs' case unless the plaintiffs had also introduced sufficient evidence to permit the trier to find the facts that it was false and that the defendant either knew it was false or published the article recklessly, "in fact entertain[ing] serious doubts as to the truth of his publication." *St. Amant* v. *Thompson,* 390 U. S. 727, 731, quoted in *Twohig* v. *Boston Herald-Traveler Corp.* 362 Mass. 807. See *Priestley* v. *Hastings & Sons Publishing Co. of Lynn, supra; Tripoli* v. *Boston Herald-Traveler Corp.* 359 Mass. 150. Since such "substantive facts [are] necessary to constitute the cause of action" when the *Times* privilege applies, they must be pleaded. G. L. c. 231, § 7, Second.[3] *Gabriel* v. *Borowy,* 324 Mass. 231, 234-235. *Cluff* v. *Picardi,* 331 Mass. 320, 322. Mottla, Civil Practice (3d ed.) § 275.

This is consistent with the indications in *Haynes* v. *Clinton Printing Co.* 169 Mass. 512, 515 ("[T]he defendant can escape liability [on] the ground of privilege, if any such appears on the face of the declaration") and *Dow* v. *Long,* 190 Mass. 138, 141 ("[U]nless the averments of the declaration show a sufficient occasion and justification for what the defendant is alleged to have done this [publication] is enough to constitute a cause of action").[4] See *Adams* v. *Clapp,* 346 Mass. 245, 248-249. Cf. *Peck* v. *Wakefield Item Co.* 280 Mass. 451, 456.

Indeed, the Supreme Judicial Court has held that where an absolute privilege appears on the face of the declaration,

---

[3] It might be said that the *Times* case abolishes the intentional tort of libel in the area of public concern and permits the States to substitute instead a cause of action for publishing defamatory material with calculated falsehood or in reckless disregard of its truth — a change analogous to the "Transition from Trespass to Negligence," discussed in Gregory and Kalven. Cases and Materials on Torts (2d ed.) 54. The *Times* case, however, speaks in terms of privilege (p. 282) and the "forfeiture of the privilege" (p. 284).

[4] Analogously, before the practice act of 1851, St. 1851, c. 233, if the declaration showed a privilege, a defendant could introduce evidence on that matter of defence although he had pleaded only the general issue. *Remington* v. *Congdon,* 2 Pick. 310. *Bradley* v. *Heath,* 12 Pick. 163.

it is subject to demurrer though, as with a qualified privilege, "[i]f the defendant relies upon the defence of absolute privilege, he has the burden of proving it." Restatement: Torts, § 613, comment f. *Mezullo* v. *Maletz,* 331 Mass. 233 (physician's certificate in commitment proceedings). *Perry* v. *E. Anthony & Sons, Inc.* 353 Mass. 112 (report of litigation in a Federal Court). *Aborn* v. *Lipson,* 357 Mass. 71 (testimony of witness). See *Cluff* v. *Picardi,* 331 Mass. 320, 323, holding a bill of complaint demurrable where a memorandum of an oral contract incorporated by reference in the bill of complaint was inadequate to satisfy the statute of frauds. The court said — particularly applicable here — "If the plaintiff at a hearing on the merits should prove all the allegations of fact properly set forth in his bill, without more, he would lose his case for lack of a sufficient memorandum". See also *Weiner* v. *Lowenstein,* 314 Mass. 642 (declaration disclosing defence of statute of frauds held demurrable); *Reavey* v. *Guild of St. Agnes,* 284 Mass. 300 (declaration for negligence held demurrable where it appeared on its face that the defendant had charitable immunity although "charitable immunity is an affirmative defence . . . not open on demurrer" [*Grueninger* v. *President and Fellows of Harvard College,* 343 Mass. 338, 339-340]).

The allegations of the declaration that the newspaper account was "false and malicious" and was published "with express malice toward the said plaintiff" are insufficient to make out a cause of action under the *Times* standard. Falsehood does not by itself make a publication actionable. "What the *New York Times* rule ultimately protects is defamatory falsehood." *Rosenblatt* v. *Baer,* 383 U. S. 75, 92 (Stewart, J., concurring). Indeed, even at common law falsehood is insufficient to overcome the conditional privilege which attaches to "[t]he publication of a report of . . . proceedings of a legislative or administrative body or an executive officer of . . . a municipal corporation or of a body empowered by law to perform a public duty." Restatement: Torts, § 611. "This privilege differs from the usual conditional privilege [e.g., the

privilege of fair comment] in that it affords protection even though the defamatory statement reported is known to be false." Restatement: Torts, § 611, comment a. See *Lewis* v. *Vallis,* 356 Mass. 662, 669 (report of false charges made at a Registry of Motor Vehicles hearing held qualifiedly privileged); *Joyce* v. *Globe Newspaper Co.* 355 Mass. 492, 498-499; *Howland* v. *Flood,* 160 Mass. 509, 516; *Sheehan* v. *Tobin,* 326 Mass. 185.

The word "malicious" does not advance the pleader. "The summary allegation that the false statements are 'malicious' is usual in a libel suit. The word is one of art in such pleadings . . . ." *Krebiozen Research Foundation* v. *Beacon Press, Inc.* 334 Mass. 86, 89-90, citing, among other cases, *Goodwin* v. *Daniels,* 7 Allen, 61, 63 ("An averment in a declaration for slander that the words were spoken maliciously is not a distinct and substantive allegation of fact, but it is only descriptive of the legal character which the law imputes to words which import a charge of crime"). In considering a declaration on demurrer we "lay to one side epithets such as 'without just cause,' and 'mali-ciously.' General conclusions of this nature without allegations of fact sufficient to support them are not admitted by the demurrer." *J. J. Gordon, Inc.* v. *Worcester Telegram Publishing Co. Inc.* 343 Mass. 142, 143, and cases cited. See *Lothrop* v. *Adams,* 133 Mass. 471, 479.

The allegation that the account was published "with express malice" does not satisfy the *Times* standard. That phrase, used interchangeably with "actual malice" and "malice in fact," commonly means "malicious intention" (*Lothrop* v. *Adams,* 133 Mass. 470, 479), "an improper motive" (*Hartmann* v. *Boston Herald-Traveler Corp.* 323 Mass. 56, 59; *Bander* v. *Metropolitan Life Insurance Co.* 313 Mass. 337, 344). See Black's Law Dictionary (rev. 4th ed.), 1109. "A wish to harm" (*Squires* v. *Wason Manufacturing Co.* 182 Mass. 137, 141) might, perhaps, rebut the common law privilege of fair reporting, although "it is questionable how far the defendant's motivation will be of controlling significance in a case of a writing in a field of public interest" even if a case were made out "of active

malice in the defendant — of a purpose to injure the plaintiffs or their business rather than an intent to publish a book about a controversial subject." *Krebiozen Research Foundation* v. *Beacon Press, Inc.* 334 Mass. 86, 89. See Restatement: Torts, § 611, comment a, taking the position that "protection is lost if the report is published *solely* for the purpose of defaming the other and not for the purpose of informing the public" (emphasis supplied). Such a motive does not in any event make a case of "actual malice" — knowing falsehood or reckless disregard — under the *Times* standard. *Beckley Newspapers Corp.* v. *Hanks,* 389 U. S. 81, *Henry* v. *Collins,* 380 U. S. 356. *Washington Post Co.* v. *Keogh,* 365 F. 2d 965 (D. C. Cir.).

We cannot construe "express malice" in the declaration to refer to "actual malice" in the *Times* sense. There is no indication in the declaration or the plaintiffs' scant brief, which does not mention the *Times* case, that more than the ordinary common law meaning of "express malice" was intended. "No intendment in favor of the pleader can be made upon a demurrer." *Comerford* v. *Meier,* 302 Mass. 398, 402. *Gabriel* v. *Borowy,* 324 Mass. 231. *Becker* v. *Calnan,* 313 Mass. 625, 630. Moreover, the "actual malice" required by the *Times* case is, as Prosser points out, akin to deceit and misrepresentation, rather than motive. Prosser, Torts (4th ed.) § 118, p. 821. It should, therefore, like fraud, be pleaded with particularity greater than the bare phrase. *Krebiozen Research Foundation* v. *Beacon Press, Inc.* 334 Mass. 86. See *Dealtry* v. *Selectmen of Watertown,* 279 Mass. 22, 26-27 (general charges of bad faith not admitted on demurrer).

This accords with the *Times* objective to minimize the inhibiting effect of the expense involved in defending libel suits on "the vigor and . . . the variety of public debate." *New York Times Co.* v. *Sullivan,* 376 U. S. 254, 279. *Time, Inc.* v. *Hill,* 385 U. S. 374, 389. The mere incantation of the words "actual malice" should not be enough to put a defendant to the expense of a trial.[5]

---

[5] The Federal Courts have recognized this consideration and have held

We therefore hold that where it appears from the publi-
cation alleged to be defamatory that the *Times* privilege
applies, the plaintiff must allege that it was false and that
the defendant either knew it was false or published the
material with reckless disregard of whether it was false.

The order sustaining the demurrers is affirmed. How-
ever, since the effect of the *Times* standard on pleadings
has not heretofore been considered by the Supreme Judi-
cial Court or this court, the plaintiffs are given leave to file a
motion to amend the declaration in the Superior Court
which motion should be allowed if the proposed amend-
ment is in conformity with this opinion. *Moran* v. *Dunphy,*
177 Mass. 485, 488. *Berkwitz* v. *Dunham,* 269 Mass. 65, 66.
Cf. *Keljikian* v. *Star Brewing Co.* 303 Mass. 53, 62-63.

> *Orders sustaining demurrers
> affirmed.*
>
> *Judgment for the defendant un-
> less within sixty days after
> rescript a motion to amend
> the declaration in conformity
> with the opinion has been
> allowed in the Superior
> Court.*

ARMSTRONG, J.    (dissenting). This case falls within the
settled rule that a demurrer to a libel action cannot be
sustained unless the publication is not reasonably capable
of any defamatory meaning. *Twombly* v. *Monroe,* 136

---

summary judgment (Rule 56, Fed. R. Civ. P.) appropriate to avoid a trial. *Bon Air
Hotel, Inc.* v. *Time, Inc.* 426 F. 2d 858 (5th Cir.), and cases cited. (Summary
judgment is not available in Massachusetts tort actions. G. L. c. 281, § 59.) See
*Stearn* v. *MacLean-Hunter Ltd.* 46 F.R.D. 76 (S. D. N. Y.) and *Arizona
Biochemical Company* v. *Hearst Corp.* 302 F. Supp. 412 (S. D. N. Y.) which point
out the availability of summary judgment and permit "actual malice" to be
pleaded generally under the second sentence of Rule 9 (b), Fed. R. Civ. P.
("Malice, intent, knowledge, and other conditions of mind of a person may be
averred generally") — although "actual malice" in the *Times* sense is not merely
"a condition of mind," but more nearly like fraud as to which the first sentence of
Rule 9 (b), Fed. R. Civ. P. applies ("in all averments of fraud or mistake, the
circumstances constituting fraud or mistake shall be stated with particularity").
See *Linn* v. *Plant Guard Workers,* 383 U. S. 53, 65-66. Nothing here should be
construed as indicating our views on the interpretation of the parallel rules in the
proposed Rules of Civil Procedure if they are adopted.

Mass. 464, 469. *Robinson* v. *Coulter,* 215 Mass. 566, 570. *Morgan* v. *Republican Publishing Co.* 249 Mass. 388, 390. *Lyman* v. *New England Newspaper Publishing Co.* 286 Mass. 258, 261. *Ingalls* v. *Hastings & Sons Publishing Co.* 304 Mass. 31, 34. *Epstein* v. *Dun & Bradstreet, Inc.* 306 Mass. 595, 596. *Tobin* v. *Boston Herald-Traveler Corp.* 324 Mass. 478, 487. *Muchnick* v. *Post Publishing Co.* 332 Mass. 304, 305-306. *Mabardi* v. *Boston Herald-Traveler Corp.* 347 Mass. 411, 413. The declaration follows the forms set forth as sufficient in G. L. c. 231, § 147, Forms, 18-20, except that no innuendo is stated. Where, as here, the published matter imputes crime, no innuendo is necessary. *Lyman* v. *New England Newspaper Publishing Co.* 286 Mass. 258, 261. Therefore I would reverse the order sustaining the demurrers.

I would not reach the question whether the words "express malice" or "actual malice" are a sufficient method of pleading facts necessary to overcome the conditional privilege enunciated in *New York Times Co.* v. *Sullivan,* 376 U. S. 254, and later cases. Privilege is a matter of defence and has repeatedly been held not to be raised by demurrer. *Robinson* v. *Coulter,* 215 Mass. 566, 571. *Peck* v. *Wakefield Item Co.* 280 Mass. 451, 457. *Ingalls* v. *Hastings & Sons Publishing Co.* 304 Mass. 31, 34-35. *Muchnick* v. *Post Publishing Co.* 332 Mass. 304, 308. It is possible, of course, for a declaration to allege facts disclosing an affirmative defence, thus enabling the defendant to raise by demurrer what he would normally raise by his answer. The majority find such disclosure not in the plaintiffs' own allegations of fact but in the text of the allegedly libelous newspaper article. I feel that the sounder approach is that taken in *Peck* v. *Wakefield Item Co.* 280 Mass. 451, 456, that facts stated in the allegedly libelous publication are not to be treated as allegations of fact by the plaintiff. The only fact these plaintiffs allege with respect to the article is that the defendant published it. They do not allege as fact any statements in the article, including those that the majority rely upon to establish privilege. Nothing in the declaration precludes a contention by the plaintiffs that

the participants at the board of health meeting did not in fact make the defamatory statements reported, that the meeting never touched upon the Roketenetz business, or that there was in fact no meeting of the board of health. *Peck* v. *Wakefield Item Co., supra.* Since the plaintiffs have not alleged facts showing conditional privilege, they are not required to allege facts sufficient to overcome the privilege.

Nothing in *New York Times Co.* v. *Sullivan* or later cases has altered our established rules of pleading or proving privilege, or the facts which overcome privilege. The burden of proving facts to overcome a conditional privilege has always been on the plaintiff. *Brow* v. *Hathaway,* 13 Allen 239. *Doane* v. *Grew,* 220 Mass. 171, 182. *Bander* v. *Metropolitan Life Insurance Co.* 313 Mass. 337, 344. Cases after *New York Times Co.* v. *Sullivan* holding that the defendant is entitled to a directed verdict where the plaintiff fails to carry that burden (*Tripoli* v. *Boston Herald-Traveler Corp.* 359 Mass. 150; *Priestley* v. *Hastings & Sons Publishing Co. of Lynn,* 360 Mass. 118; *Twohig* v. *Boston Herald-Traveler Corp.* 362 Mass. 807) stand on no different footing from such earlier cases as *Childs* v. *Erhard,* 226 Mass. 454, and *Terrini* v. *New England Steamship Co.* 244 Mass. 325.

Even if facts stated in the allegedly libelous publication were treated as part of the plaintiffs' own allegations of facts, any conditional privilege thus disclosed was sufficiently rebutted by pleading that the defendant acted with "actual malice", "express malice", or "malice in fact."[1] The *New York Times Co.* case itself used the phrase "actual malice" to denote the knowledge of falsity or reckless disregard necessary to overcome the privilege. 376 U. S. 254, 279-280. So do *Tripoli* v. *Boston Herald-Traveler Corp., Priestly* v. *Hastings & Sons Publishing Co. of Lynn,* and *Twohig* v. *Boston Herald-Traveler Corp.,* all *supra.*

---

[1] The phrases are used interchangeably. See *Hartmann* v. *Boston Herald-Traveler Corp.* 323 Mass. 56, 59; *Bander* v. *Metropolitan Life Insurance Co.* 313 Mass. 337, 343-344; *Sweet* v. *Post Publishing Co.* 215 Mass. 450, 452.

The plaintiff in a libel action should be able to use the same phrase. To require more particularity cannot, in my opinion, materially reduce "the inhibiting effect [on public debate] of the expenses involved in defending libel suits." Few plaintiffs in libel actions will be loathe to recite that the defendant published "with reckless disregard of whether the facts were true or false."